**TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST; Trustees of the Operating Engineers Health and Welfare Fund; Trustees of the Operating Engineers Vacation–Holiday Fund; Trustees of the Operating Engineers Apprenticeship Training Trust; and Operating Engineers Industry Promoting Fund, Plaintiffs,**

v.

**Richard O'DELL, individually and Decision, d/b/a Horizon Construction; Does I through V; and Doe Corporations I through V, Defendants.**

**No. CV–S–86–791–PMP.**

United States District Court.
D. Nevada.

March 7, 1988.

Kevin B. Christensen, Kurt D. Anderson, Sabbath & Christensen, Las Vegas, Nev., for plaintiffs.

James B. Gibson, Wesley F. Yamashita, Mills, Gibson & Carter, Las Vegas, Nev., for defendants.

## FINDINGS OF FACT AND MEMORANDUM DECISION

PRO, District Judge.

On August 15, 1986, Plaintiffs ("Trustees"), in their capacity as fiduciaries charged with the administration of their respective employee benefit trusts ("Trusts"), filed a Complaint (# 1) against Defendants ("O'Dell") to recover alleged delinquent trust fund contributions required under certain collective bargaining agreements signed by O'Dell, an employer. These collective bargaining agreements incorporated the terms and conditions of certain multi-employer trust agreements establishing the Trusts. The Court's jurisdiction was properly invoked under § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1132(g) and 1145, and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

O'Dell filed an Answer (# 4) on October 29, 1986, in which he raised eight affirmative defenses. After extensive discovery had been completed, the Trustees filed a Motion for Summary Judgment (# 15) on November 2, 1987. On November 18, 1987, O'Dell filed Points and Authorities in Opposition to Motion for Summary Judgment (# 19), to which the Trustees filed Points and Authorities in Reply (# 20) on December 3, 1987.

For the reasons discussed below, the Court concludes that summary judgment must be granted in favor of the Trustees.

## FINDINGS OF FACT

With the benefit of the extensive discovery that has been conducted by both sides to this action, the Court has exhaustively reviewed the pleadings, declarations, exhibits and appendices which constitute the record of this action. Based on such overview, the Court makes the following findings of fact:

1. That the Trustees are fiduciaries charged with the administration of the

Trusts. (#15, Declaration of Leo Majich, ¶¶4, 10–13, 19–20, Exhibit "A", Exhibit "B", p. 5, Exhibit "B–1", p. 7, attached thereto.) See also, #15, Declaration of Verne Dahnke, Exhibit "B", pp. 48, 55, Exhibit "C", pp. 51, 56, Exhibit "D", pp. 51, 55, attached thereto.

2. That the Trusts are joint labor-management employee benefit trusts established and existing pursuant to written declarations and agreements of trust between the International Union of Operating Engineers, Local No. 12 ("Local 12"), and various multi-employer associations in the construction industry in Southern California and Southern Nevada. (#15, Declaration of Jerry Claborn, ¶4, Exhibit "A", attached thereto, Declaration of Leo A. Majich, ¶¶3, 8, 9, Exhibit "A" attached thereto, Declaration of Verne Dahnke, ¶9, Exhibits "A, B, C, D", attached thereto.)

3. That at all times relevant herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada and, in particular, has been representing the employees doing operating engineer work for O'Dell d/b/a Horizon Construction. (#15, Declaration of Jerry Claborn, ¶¶2, 4, Declaration of Verne Dahnke, ¶¶4, 6, 9, attached thereto.)

4. That at all times relevant to this action, O'Dell d/b/a Horizon Construction, is and was an employer engaged in the construction business in the State of Nevada. (#15, Declaration of Jerry Claborn, ¶¶6–7, attached thereto; correspondence between O'Dell and State Contractors Board and "Horizon Construction ... Company (A Proprietorship) Financial Statements (Compiled)," compiled in Appendix "C".)

5. That on or about June 27, 1980, O'Dell d/b/a Horizon Construction, executed and delivered to Local 12 a written collective bargaining agreement ("Labor Agreement") whereby O'Dell agreed to be bound by the terms and conditions, with certain exceptions, of various written and existing agreements between various multiemployer associations and Local 12. In particular, O'Dell agreed to be bound by the Master Labor Agreement ("Master Agreement") then in effect in the geo-

graphical area in which Horizon Construction was doing business at said time; and further, that on June 27, 1980, O'Dell executed written Acknowledgments and Acceptances of Trust ("Trust Agreements") establishing the Trusts. (#15, Declaration of Leo A. Majich, ¶8, and Exhibit "A", attached thereto; Declaration of Verne Dahnke, ¶9, and Exhibit "A", attached thereto.)

6. That on or about March 4, 1981, on behalf of the partnership between O'Dell and Robert Taylor known as Horizon Construction, O'Dell executed and delivered to Local 12 a written agreement whereby O'Dell agreed to be bound by the terms and conditions, with certain exceptions, of various multi-employer associations and Local 12. In particular, O'Dell agreed to be bound by the Master Agreement then in effect in the geographic area in which Horizon Construction was doing business at such time; and further, that on March 4, 1981, O'Dell executed written ... Trust Agreements establishing the Trusts. (#15, Declaration of Jerry Claborn, ¶4, and Exhibit "A", attached thereto.)

7. That the partnership between O'Dell and Robert Taylor formed in 1975 was no longer in existence during the period of Trustees' audit claim. (#15, Answers to Interrogatories, O'Dell's answer to Interrogatory No. 1(b), attached to Appendix "C".)

8. That the Master Agreements for 1977–80, 1980–83, 1983–86 and 1985–89 are incorporated by reference into the Labor Agreement executed by O'Dell d/b/a Horizon Construction and contain the trust fund contribution and report provisions relevant to this action. (#15, Declaration of Jerry Claborn, ¶4, and Exhibit "A", attached thereto; Declaration of Verne Dahnke, ¶¶4, 6, 9, and Exhibit "A" attached thereto.)

9. That at all time material to this action, O'Dell has been obligated to the terms of the Labor Agreement, Master Agreements, and respective Trust Agreements. *Id.*

10. That at all times material to this action, and pursuant to the Master Agreements and the Trust Agreements, O'Dell was obligated to (i) submit monthly written

reports on a timely basis to the Trusts' administrative offices in Pasadena, California, and in Las Vegas, Nevada, identifying therein those employees performing covered work, the hours such employees worked, and (ii) remit payment of trust contributions at contractually specified rates for each hour worked or paid, such report and payments being due by the 10th day of each successive month at the Trusts' respective administrative offices. (# 15, Declaration of Leo A. Majich, ¶ 10, and attached exhibits referred to therein; Declaration of Verne Dahnke, ¶¶ 11, 12, and attached exhibits referred to therein.)

11. That on August 5, 1987, an auditor hired by Trustees completed an audit of Horizon Construction's payroll and business records to determine the accuracy and correctness of the monthly trust fund contribution reports filed by Horizon Construction for the period from December 1983 to December 1986 (the "Audit Period"). (# 15, Declaration of Donald Allen, ¶ 2, and attached exhibits.)

12. That the following persons were employees of O'Dell d/b/a Horizon Construction during a portion of the Audit Period: Randy Evans, Shane Evans, Dennis Lilley, David Roy, Russell Stoddard, Chris Stoddard, Chris Stover, Keith Stover, Mike Thompson, Dennis M. Whalen, and John Whalen. (# 15, Declaration of Donald Allen, ¶¶ 2-4, and attached exhibits; Tax information (W-2s) compiled in Appendix "C".)

13. That during the Audit Period, O'Dell d/b/a Horizon Construction failed to report and pay for covered work performed by: Randy Evans, Shane Evans, Dennis Lilley, David Roy, Russell Stoddard, Chris Stoddard, Chris Stover, Keith Stover, Mike Thompson, Dennis M. Whalen, and John Whalen. (# 15, exhibits attached to Declaration of Donald Allen.)

14. That the audit of Horizon Construction's payroll records reflects that during the Audit Period, a total of 10,607.5 hours worked by or paid to Randy Evans, Shane Evans, Dennis Lilley, David Roy, Russell Stoddard, Chris Stoddard, Chris Stover, Keith Stover, Mike Thompson, Dennis M. Whalen, and John Whalen were not report-

ed to the Trusts, and trust fund contributions in the amount of $78,495.50 are due to the Trusts by O'Dell for such unreported hours. (# 15, Declaration of Donald Allen, ¶¶ 5, 6, and attached exhibits.)

15. That the custom and practice of the Trusts is to exempt from the trust fund contribution and report provisions of the Labor Agreement, Master Agreement, and Trust Agreements employees with an ownership interest of at least ten percent (10%) in the signatory employer. (# 15, Deposition of O'Dell excerpts, p. 25, ln. 17-24, compiled in Appendix "C".)

16. That O'Dell has refused to report or pay trust fund contributions on behalf of Dennis M. Whalen and Robert K. Stover ("Whalen and Stover, respectively") based on his claim that they are exempted partners of Horizon Construction. (# 15, Documents disproving partnership, letter from O'Dell to Local 12, and Answers to Interrogatories, O'Dell's answers to Interrogatory Nos. 3(b) and 4(b), compiled in Appendix "C".)

17. That on or about January 31, 1984, O'Dell notified Local 12, by letter, that Whalen and Stover owned no less than ten percent (10%) ownership in Horizon Construction, pursuant to a limited partnership agreement allegedly signed by the parties on January 1, 1984. (# 15, Documents disproving partnership, letter from O'Dell to Local 12, compiled in Appendix "C".)

18. That O'Dell is unable to produce a copy of the limited partnership agreement allegedly executed on January 1, 1984, and that Whalen and Stover have no recollection of any limited partnership agreement. (# 15, Deposition of O'Dell excerpts, p. 20, ln. 19, Deposition of Whalen excerpts, p. 60, lns. 11-20, compiled in Appendix "C".)

19. That during the period subsequent to January 1, 1984, Whalen and Stover did not change the nature of their work, but continued to perform work covered under the Master Agreement, and continued to be issued W-2 tax forms as employees of Horizon Construction. (# 15, Declaration of Donald Allen, ¶ 4, and Tax information (W-2s) compiled in Appendix "C".)

20. That O'Dell owned and controlled all of the assets of Horizon Construction.

(# 15, Answers to Interrogatories, O'Dell's answer to Interrogatory No. 1(d)(3), Deposition of O'Dell excerpt, p. 37, lns. 17–21, p. 80, lns. 14–19, compiled in Appendix "C".)

21. That there was no understanding as to when and how to distribute profits or allocate debt among Whalen, Stover and O'Dell. (# 15, Deposition of O'Dell excerpts, p. 44, lns. 12–16, p. 45, lns. 2–8; Deposition of Whalen excerpts, p. 34, ln. 25, compiled in Appendix "C".)

22. That to date there are no certificates of limited partnership filed with the Nevada Secretary of State, and no partnership tax returns have been prepared or filed with the Internal Revenue Service by or on behalf of the alleged limited partnership between O'Dell, Whalen and Stover. (# 15, Deposition of O'Dell excerpts, p. 90, ln. 21; and Documents disproving partnership, certificate of non-existence, tax returns, compiled in Appendix "C".)

23. That at all times material to this action, Whalen and Stover did not share in Horizon Construction's profits or pay its losses and had no authority to bind Horizon Construction to contracts, sell its assets, or manage its business affairs. (# 15, Deposition of Whalen excerpts, p. 34, ln. 25, p. 35, ln. 6; Deposition of O'Dell excerpts, p. 73, ln. 7, p. 45, lns. 2–8, compiled in Appendix "C".)

24. That following the execution of the January 31, 1984 letter from O'Dell to Local 12, O'Dell retained ownership and control of Horizon Construction, and filed individual tax returns with the Internal Revenue Service in which he identified Horizon Construction as a sole proprietorship. (# 15, Deposition of O'Dell excerpt, p. 43, lns. 20, 24, Documents disproving partnership, Form 1040 U.S. Individual Income Tax Return (1985), Schedule C: Profit or (Loss) from Business or Profession (Sole Proprietorship), compiled in Appendix "C".)

25. That during all times material to this action, O'Dell held himself out as a sole proprietor d/b/a Horizon Construction. (# 15, Accounts receivable invoices, bills, proposals, contracts signed by O'Dell as "owner," subcontract dated June 21, 1986, O'Dell checked box identifying Horizon Construction as "proprietorship" (boxes labeled "corporation," "partnership" left blank), compiled in Appendix "A"; Documents disproving partnership, Form 1040 U.S. Individual Income Tax Return (1985), Schedule C: Profit or (Loss) from Business or Profession (Sole Proprietorship), Horizon Construction Financial Statements, Security Agreement dated June 25, 1986, letter of introduction by Whalen ("Office Manager"), compiled in Appendix "C"; # 20, Affidavit of Sylvia G. Gross, ¶ IV, attached thereto.)

26. That no written modifications, waivers, releases or contracts exist modifying, waiving or releasing O'Dell's obligations under the Labor Agreement, Master Agreement, and Trust Agreements to make contributions to the Trusts on behalf of any employee performing work covered by the Master Agreement. (# 15, Declaration of Leo A. Majich, ¶ 17, attached thereto.)

27. That at all times material to this action, Article XIV of the Master Agreement has provided that, in addition to unpaid contributions, any employer who is found to be delinquent shall pay the Trusts' reasonable attorney's fees, court costs, and audit costs incurred in connection with the delinquency, together with prejudgment interest and liquidated damages calculated at the rate of twenty-five dollars ($25.00) per month, ten percent (10%) of the total delinquency, or interest calculated at statutory rates, whichever is greater. (# 15, Declaration of Leo A. Majich, ¶ 10; and Exhibit "B", Article XIV(B)(7), p. 59, Exhibit "C", Article XIV(B)(7), p. 61, Exhibit "D", Article XIV(B)(7), p. 60, attached to Declaration of Verne Dahnke.)

. . .

28. That the total damage owed by O'Dell d/b/a Horizon Construction to Trustees is as follows:

| | | |
|---|---|---|
| (a) | unpaid contributions | $ 78,495.40 |
| (b) | liquidated damages | 10,336.16 |
| (c) | prejudgment interest | 10,336.16 |
| (d) | reasonable attorney's fees | 28,953.25 |
| (e) | audit costs | 250.00 |
| | | $128,371.07 |

(# 15, Declaration of Donald Allen, ¶¶ 5, 6; Declaration of Attorney's Fees and Costs; Summary of Damage Claims.)

29. Any conclusion of law which is deemed a finding of fact is hereby incorporated into these findings of fact.

## STANDARD FOR GRANT OF SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." O'Dell asserts that there is a genuine issue of material fact as to (1) whether or not a limited partnership between O'Dell, Whalen, and Stover was established as of January 1, 1984; (2) the auditor's conclusions regarding the number of hours listed as operating hours and the dollar amounts determined to be due and owing; and (3) whether the employees named by Trustees were performing work covered by the Master Agreement.

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th 1982). However, this does not require that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.

2d 202 (1986). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. See *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982); *United States v. First National Bank of Circle*, 652 F.2d 882, 887 (9th Cir.1981).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

Applying these legal principles, the Court concludes that Trustees' Motion for Summary Judgment must be granted.

## NO GENUINE ISSUE OF MATERIAL FACT THAT O'DELL'S EMPLOYEES PERFORMED COVERED WORK OR IN AMOUNT OF O'DELL'S DELINQUENCY

Trustees have presented evidence to the effect that O'Dell was and is bound by the terms of the Labor Agreement, Master Agreement, and Trust Agreements. In addition, Trustees have presented evidence which demonstrates that the persons named by Trustees as employees of O'Dell d/b/a Horizon Construction performed work covered under the Master Agreement to which O'Dell was bound. Finally, Trustees have presented evidence which demonstrates that an audit of Horizon Construction's records revealed that O'Dell failed to pay Trust Fund contributions on behalf of the employees named in this action by Trustees.

O'Dell includes only a perfunctory denial in his Opposition to Motion for Summary Judgment (# 19).[1] Although O'Dell has

---

1. O'Dell confines his argument against Trustees' well-documented assertions to the following two sentences: "[O'Dell] disputes the number of hours listed as operating hours and the dollar

amounts determined to be due and owing by the auditors for the Engineers Trust Funds. Certain of those listed as operators did not operate machinery at any time." (# 9, p. 4)

had discovery of the auditor's report, he does not submit any evidence to substantiate his claim of improper accounting. Instead, without adducing any facts to support his bare contention, O'Dell merely concludes that the auditor reached the wrong result.

This precise situation was considered in *Huge v. Reid*, 468 F.Supp. 1024, 1028 (N.D. Ala.1979), in which the district court held that summary judgment concerning accounting problems is proper once:

> the moving party sets out a detailed statement of account and the opposing party fails to adduce specific, legally cognizable items of debit or credit not included in the movant's statement, demonstrating that the amount claimed is inaccurate. (quoting *Golden Oil, Inc. v. Exxon Co.*, 543 F.2d 548, 551 (5th Cir. 1976)).

■ Since O'Dell does not dispute his contractual obligation to make contributions to the Trusts pursuant to the Master Agreement and the Trust Agreements, he only disputes the extent of his delinquency. O'Dell implicitly asserts that if his employees did not operate machinery, then for the hours during which such employees did not operate machinery, he is not obligated to make trust fund contributions on their behalf. This notion is unfounded. It is settled in the Ninth Circuit that where an employee splits his worktime between a position covered by a master labor agreement and a position not covered, the employer must contribute for *all* the hours such employee works or is paid. *Waggoner v. Dallaire*, 649 F.2d 1362, 1369 (9th Cir.1981) (reviewing a master labor agreement identical to that signed by O'Dell, and citing a string of Ninth Circuit decisions in which an employee split worktime between

a "covered" operating engineer position and a "non-covered" laborer's or administrative position, and the employer nevertheless was held liable for trust fund contributions for *all* the hours for which the employee worked.)[2]

In sum, pursuant to the Labor Agreement, Master Agreement, and Trust Agreements, and as a matter of law, O'Dell d/b/a Horizon Construction was and is required to make contributions to the Trusts on behalf of the employees listed in the audit as well as in Trustees' pleadings, because all of them performed work covered under the Master Agreement. Consequently, there can be no genuine issue of material fact as to whether O'Dell owes the amount indicated by Trustees.

## NO GENUINE ISSUE OF MATERIAL FACT THAT HORIZON CONSTRUCTION IS NOT A NEVADA LIMITED PARTNERSHIP

■ Both Trustees and O'Dell apparently agree that pursuant to the custom and practice of the Trusts, employees owning at least ten percent (10%) of the signatory employer are exempt from Agreement, Master Agreement, and Trust Agreements report and contribution provisions. *Trustees of Operating Engineers Pension v. Burton*, 620 F.Supp. 304, 308 (Nev.1985). O'Dell asserts that, pursuant to an alleged limited partnership agreement executed on January 1, 1984, Whalen and Stover are limited partners in Horizon Construction and are therefore exempt from the trust fund contribution and reporting requirements. To support this contention, O'Dell offers the January 31, 1984 letter from O'Dell to Local 12 stating that Horizon Construction was a limited partnership and that Whalen and Stover were limited partners therein with at least ten percent (10%) ownership interest, respectively.[3]

---

**2.** See also *Kemmis v. McGoldrick*, 767 F.2d 594, 598 (9th Cir.1985), in which the Ninth Circuit stated, "We further note that there is a line of Ninth Circuit cases suggesting that interpretation of provisions of a Master Labor Agreement should be treated as a matter of law controlling in subsequent cases. The overriding federal policy is best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." (Citations and quotations omitted.)

**3.** In addition, attached to O'Dell's Opposition to Motion for Summary Judgment is the Affidavit of Lamond R. Mills, counsel to O'Dell. Mills avers that at the depositions of Whalen and Stover, respectively, he heard them state that Horizon Construction was a partnership, and that they did not receive predetermined salaries, but rather, their compensation was dependent upon capital and profits from operations. (# 19, Affidavit of Lamond R. Mills, ¶ 5, 6, attached thereto.) While Mills has personal knowledge of what he heard at the deposition, the contents

O'Dell does not dispute that he is legally bound by the terms of the Labor Agreement, Master Agreement, and Trust Agreements to make trust fund contributions on behalf of employees who performed covered work. Consequently, at trial, O'Dell would bear the burden of proving that Whalen and Stover are exempt from the contribution requirements. The letter, however, is not accompanied by the limited partnership agreement referred to therein, and O'Dell is unable to produce the alleged agreement. Moreover, Trustees have produced evidence indicating that no certificate of limited partnership has been filed with the Nevada Secretary of State, and that at all times material to this action, O'Dell conducted, and has continued to conduct, the business of Horizon Construction as a sole proprietorship.

The standard for granting summary judgment established in *Celotex Corp. v. Catrett,* cited *supra,* make clear that O'Dell's single letter cannot preclude summary judgment if the evidentiary record leads the Court to conclude, as a matter of law, that Horizon Construction was not a Nevada Limited partnership. The Supreme Court was unambiguous in this regard:

> In our view, the plain language of [FRCP] Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to *make a showing sufficient to establish the existence of an element essential to that party's case,* and on which that party will *bear the burden of proof at trial.* In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts imma-

terial. 106 S.Ct. 2548, 2553 (1986) (Emphasis added.)

In this action, O'Dell has failed to produce a copy of the alleged limited partnership agreement. There is, therefore, insufficient evidence from which a rational trier of fact could discern that Whalen and Stover did, in fact, enter into an agreement with O'Dell, the terms of which were legally sufficient to exempt them from the reporting and contribution requirements of the Trust Agreements. Accordingly, signatures of Whalen and Stover on the January 31, 1984 letter from O'Dell to Local 12 simply do not present a sufficient disagreement in terms of the evidentiary record to require submission to a jury.

The Supreme Court decision in *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, cited *supra,* set the standard on this very issue, as follows:

> The Court has said that summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; *summary judgment motions are usually made before trial and decided on documentary evidence,* while directed verdict motions are made at trial and decided on the evidence that has been admitted." In essence, though, the inquiry under each is the same: *whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.*

of his affidavit do not add to the record before the Court. The questions presented at the depositions were framed assuming the existence of a limited partnership. Consequently, the answers occasionally contained a reference to "the partnership." Nevertheless, after reviewing the deposition excerpts compiled in Appendix "C" to Trustees' Motion for Summary Judgment, the Court concludes that there is no indication that Whalen or Stover signed the alleged limited partnership agreement, or functioned in any capacity other than employees of O'Dell.

It is clear from the record, moreover, that both Whalen and Stover were compensated on the basis of wages, reflected by W–2 forms, and while the sometimes uneven cash flow of Horizon Construction did not always permit the issuance of standard weekly paychecks, a tabulation was kept so as to permit the payment of salary previously earned, but not paid when due. (# 15, Deposition of Whalen excerpts, p. 35, ln. 6, p. 37, lns. 8–12, compiled in Appendix "C".)

.... The mere existence of a *scintilla of evidence* in support of the [non-moving party's] position will be *insufficient;* there must be evidence on which the jury could reasonably find for the [non-moving party]. 106 S.Ct. 2505, 2513 (1986) (citations omitted) (emphasis added).

Finally, in a third recent decision, the Supreme Court maintained that if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In sum, it can no longer be argued that any disagreement about a material issue of fact precludes the grant of summary judgment. *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987).

## O'DELL FAILED TO ESTABLISH A NEVADA LIMITED PARTNERSHIP AS A MATTER OF LAW

In light of the Supreme Court's recent trilogy of decisions concerning motions for summary judgment, the Court's task is to determine whether or not O'Dell's January 31, 1984 letter to Local 12 raises a genuine issue of material fact sufficient to preclude summary judgment in favor of Trustees as a matter of law.

The applicable law in this action is determined by the Trustees invocation of the Court's jurisdiction under § 301(a) of LMRA, 29 U.S.C. § 185(a) and § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). In keeping with the doctrine of *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir.1979), the Ninth Circuit held that in considering actions to enforce obligations arising under labor contracts, the court must apply federal substantive law, though the court may look to state law for guidance.[4]

The paramount policy served by the remedy provided under § 301 of LMRA is consistency in the enforcement of labor contracts. See *Seymour*, 605 F.2d 1105, 1109 (9th Cir.1979). The rules on formation of a limited partnership do not directly expose interpretation and enforcement of labor contracts to the risk of disharmony which § 301 is designed to prevent. The quality of the remedy is affected, however, if employees are denied their pension benefits due to technical machinations concocted by an employer solely to skirt his obligations to contribute to the union pension fund pursuant to the labor contract.

While there is a paucity of partnership law decisions handed down by the Nevada Supreme Court, both the Uniform Partnership Act and the Uniform Limited Partnership Act have been in effect in Nevada since 1931. NRS 88.010.[5] Accordingly, the Court can turn to federal judicial decisions from other jurisdictions interpreting the Uniform Limited Partnership Act to conclude whether or not, under the circumstances, the January 31, 1984 letter raises a genuine issue of fact concerning the existence of Horizon Construction as a limited partnership.[6] See *Bisno v. Hyde*, 290 F.2d 560 (9th Cir.1961).

---

**4.** In *Seymour,* plaintiff trustees of an employee pension trust brought an action against a partnership for contributions allegedly due the trusts under the terms of collective bargaining agreements executed between the relevant union and the defendant employer. On appeal, the trustees contended that the district court erred in not holding the individual members of the partnership liable for the full amount of the contributions due, and in allowing the partners to use a corporate shield to avoid personal liability. The Ninth Circuit applied certain guidelines developed in federal cases dealing with disregard of the corporate entity: "Viewing the jumble of federal decisions together, we find a sort of generalized federal substantive law on disregard of corporated entity.... Federal decisions naturally draw upon state law for guidance in this field." 605 F.2d 1105, 1111 (9th Cir.1979).

**5.** NRS 88.020–.310 was effective until January 1, 1987, at which time NRS 88.315–645 became effective. Since O'Dell asserts that Horizon Construction was established as a limited partnership as of January 1, 1984, the Court must apply the provisions of NRS 88.030 to ascertain whether, as a matter of law, Horizon Construction was a limited partnership during the period relevant to this action.

**6.** Nevada Revised Statutes ("NRS") Chapter 88 codifies the Uniform Limited Partnership Act. Nev.Rev.Stat. § 88.280 (Rules of construction) provides in part, "This chapter [88] shall be so interpreted and construed as to effectuate its

Nevada Revised Statutes ("NRS") Chapter 88, the Uniform Limited Partnership Act explicitly provides at § 88.030(2) that, "A limited partnership is formed if there has been substantial compliance in good faith with the requirements of subsection (1)." NRS 88.030(1), in turn, requires that the parties desiring to form a limited partnership (a) sign and acknowledge a certificate which states information enumerated at § 88.030(1)(a), and (b) file the certificate for record in the appropriate county recorder's office.[7]

In the absence of the putative limited partnership agreement allegedly executed on January 1, 1984, O'Dell relies on Whalen's and Stover's signature on the January 31, 1984 letter to Local 12 indicating that Horizon Construction was a limited partnership, and that they were limited partners thereof. The signatures of Whalen and Stover on the January 31, 1984 letter to Local 12, are arguably indicative of their awareness that O'Dell singled them out for different classification with regard to Local 12. In the context of this action, however, the signatures affixed to such letter cannot be deemed sufficient indicia of the establishment of Horizon Construction as a Nevada limited partnership.

O'Dell would have the Court infer a limited partnership from his January 31, 1984 letter to Local 12 as indicative of the parties' intention to create a limited partnership. Applying the Uniform Limited Partnership Act in the bankruptcy context, the court in *In re Minton Group, Inc.*, 28 B.R. 774, 786 (Bkrtcy.S.D.N.Y.1983), noted that while intent to create a general partnership could, under certain circumstances, be inferred from the parties' actions, no such inference could be made with regard to a limited partnership:

a *limited* partnership is purely a *statutory creation* and can exist only under the provisions of [the Uniform Limited Partnership Act]. Substantial compliance with [the companion provision to NRS 88.030] is required to create a limited partnership. If an unexecuted limited partnership agreement is to be given the same consideration as one executed and filed in accordance with the statutory requirements, then it hardly would seem necessary for those interested in establishing limited partnerships to trouble themselves with the formalities of statutory compliance. (Emphasis added.)

In *United States v. Coson*, 286 F.2d 453, 461 n. 13 (9th Cir.1961), by way of its analysis of the Nevada Uniform Limited Partnership Act, the Ninth Circuit affirmed that in the absence of compliance with the statutory prerequisites, an inference of limited partnership based solely on imputed intent of the parties is not judicially cognizable;

Of course an intent to become a *general* partner may be inferred from conduct.... The ancient rule that a failure to comply with statutory provisions required to form a limited partnership renders the association a general partnership, (citations omitted) *vanished with the enactment of the Uniform Limited Partnership Act.* As stated in the Commissioners' Note on the Act: "Third: The limited partner not being in any sense a principal in the business, failure to comply with the requirements of the act in respect to the certificate, while it may result in the non-formation of the association, does *not* make him a partner or liable as such." (Emphasis added.)

Moreover, assuming *arguendo,* that the existence of a limited partnership could be inferred, as a matter of law, from the parties' conduct, as in the context of an alleged general partnership, under the circumstances of this case, no such inference is possible.[8]

---

general purpose to make uniform the law of those states which enact it."

**7.** NRS Chapter 87 (Uniform Partnership Act) codified the rules and procedures governing the establishment of general partnerships, which are quite distinct from those governing limited partnerships. There is no one exclusive test in determining whether an agreement is one of

tionship depends upon the intent of the parties, and every case has been deemed to stand up on its own merits. *Las Vegas Machine & Engineering Works, Inc. v. Roemisch,* 67 Nev. 1, 213 P.2d 319, 323 (1950); *In re Western World Funding, Inc.,* 52 B.R. 743, 776 (Bkrtcy.Nev.1985).

**8.** Analogous to this action, *In re Western World Funding, Inc.,* 52 B.R. 743, 776 (Bkrtcy.Nev.

In sum, the Court has concluded that as a matter of law, Richard O'Dell d/b/a Horizon Construction, is not a Nevada limited partnership, but rather, is a sole proprietorship. Consequently, Whalen and Stover are not exempted from the contribution requirements because neither of them own at least ten percent (10%) of Horizon Construction. See *Trustees of Operating Engineers Pension v. Burton,* 620 F.Supp. 304, 308 (Nev.1985), cited *supra.*

### AFFIRMATIVE DEFENSES RAISED BY O'DELL ARE NOT LEGITIMATE AND DO NOT PRECLUDE SUMMARY JUDGMENT

O'Dell raises eight affirmative defenses to Trustees' claim for trust fund contributions, as follows: (1) failure to allege sufficient facts upon which a cause of action can be stated and relief granted; (2) Defendant O'Dell has been forced to hire an attorney; (3) action barred by Nevada statute of limitations; (4) laches; (5) waiver: (6) estoppel; (7) failure to mitigate damages; and (8) ratification. Defendant's Answer (# 4).

■ O'Dell's first affirmative defense is patently unfounded. Trustees' Complaint (# 1) clearly meets the notice pleading requirement established by FRCP 8. The second "affirmative defense" is in fact a counterclaim, and does not affect the merits of this action. As to the third affirmative defense, O'Dell is correct to the extent that actions brought under § 301 of the LMRA, 29 U.S.C. § 185, are governed by the applicable statute of limitations of the forum state. *International Union v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). NRS 11.190(1)(b), however, provides for a six-year period within which to file an action for violation of a contract or written instrument. Since this action is based upon O'Dell's failure to make trust fund contributions during the Audit Period (December 1983 to December 1986), and Trustees' Complaint was filed on August 15, 1986, this action is not barred by the applicable Nevada statute of limitations.

The remainder of the affirmative defenses raised by O'Dell are either equitable defenses, or arise out of traditional contract law. It is well-established that these particular defenses are unavailable in suits brought under the LMRA and ERISA to collect delinquent trust fund contributions. See *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769 (9th Cir.1986); *Southern Cal. Retail Clerks Union v. Bjorklund,* 728 F.2d 1262 (9th Cir.1984); *Audit Services v. Rolfson,* 641 F.2d 757 (9th Cir.1981). Moreover, O'Dell's eighth affirmative defense, ratification, is not only unavailable as a matter of law because it does not effectuate the policy that underlies the LMRA and ERISA, (see *Waggoner v. Dallaire,* 649 F.2d 1362, 1365 (9th Cir. 1981), but under the facts of this action, it is inapplicable since the Trusts received no contributions during the Audit Period. Consequently, Trustees could not have ratified O'Dell's failure to make any contributions when no contributions whatsoever were received during the period relevant to this action.

### CONCLUSION

Trustees, in their capacity as fiduciaries under the Trusts, have properly invoked the jurisdiction of this Court under § 301 of LMRA, 29 U.S.C. § 185, and § 502 of ERISA, 29 U.S.C. § 1132. The Court has conducted an exhaustive review of the record and has made findings of fact, as enumerated above. In addition, the Court has determined that O'Dell has failed to raise a genuine issue of material fact which would preclude judgment in Trustees' favor as a matter of law.

Sections 1132 and 1145 of 29 U.S.C., ERISA, govern the enforcement of employer contributions to employee pension and welfare trusts. Section 1145 provides in pertinent part:

> Every employer who is obligated to make contributions to a multi-employer plan

Nevada considered the alleged existence of an agreement to share profits when they were generated, and held that this was insufficient to constitute a general partnership: "... [F]rom the dealings among the parties, this appears to be merely an agreement to agree some time in the future to be sharing of profits. There was no present partnership contract, express or implied. Therefore, there can be no partnership liability...."

under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

Section 1132(g)(2) provides that:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

In accordance with the governing provisions of ERISA, and following the Court's review of the Declaration of Donald Allen, Declaration of Attorney's Fees and Costs, and the Summary of Damage Claims, the Court has determined that Trustees are entitled to damages based upon delinquent contributions in the amount of $78,495.40, liquidated damages in the amount of $10,366.16, audit costs in the amount of $250.00, prejudgment interest in the amount of $10,366.16, attorney's fees in the amount of $28,953.25, and court costs.[9]

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment is granted.

9. The Court has determined that the attorney's fees incurred by Trustees' counsel is reasonable, applying the 12–factor test approved by the Ninth Circuit. *Kerr v. Screen Extras Guild, Inc.,*

IT IS FURTHER ORDERED that judgment shall be entered in favor of Plaintiffs and against Richard O'Dell d/b/a Horizon Construction in the sum of $128,371.07.

526 F.2d 67 (9th Cir.1975); *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1107 (9th Cir.1979).