## LAS VEGAS MACHINE & ENGINEERING WORKS, INC., a Nevada Corporation, Appellant, v. RUSSELL H. ROEMISCH, Respondent.

No. 3590

January 3, 1950.                                    213 P.2d 319.

2

*Taylor & Gubler,* of Las Vegas, for Appellant.

*A. W. Ham & A. W. Ham, Jr.,* and *John W. Bonner,* all of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, J.:

Does the contract entered into by these litigants make them joint adventurers and governed by the law of copartnerships, including the right of contribution to share the loss suffered by the alleged joint adventure?

It will avoid confusion to call the parties by their names—plaintiff and respondent being referred to as Roemisch, defendant and appellant being called the Machine Works, and the third party to the contract (not a party to the suit) being called Perry. These parties on April 7, 1947 entered into the following written contract:

"CONTRACT

"The parties whose names are signed below mutually agree to a three-way division of profits over and above all expenses incurred in the performance of a certain contract entered into between the Las Vegas Machine & Engineering Works, a Nevada Corporation, and Morrison-Knudsen Company for the erection of sheet metal roofing, walls and flashing on a building for the U. S. Gypsum Co. at Plaster City, California.

"The Las Vegas Machine & Engineering Works, Inc., assumes responsibility for performance of the contract. R. C. Perry, as consideration for his part, agrees to diligently superintend all of the construction work.

"R. H. Roemisch participates because of services rendered in relation to the contract and to the loan to the

corporation, not to exceed $5,000, to assist in financing payroll and expenses."

On April 15, 1947, Roemisch advanced $2,500 to the Machine Works and took its promissory note payable June 15, 1947, with interest at 6%. The Machine Works completed the construction contract in the latter part of January, 1948, at a loss of $16,313.56, the difference between the $84,000 it paid for labor and materials and the amount it received from Morrison-Knudsen. It never made a demand on either Roemisch or Perry for contribution for this loss, but when Roemisch sued on the note on September 17, 1948, the Machine Works, while admitting nonpayment of the note, answered and cross-complained by setting up its claim to contribution for Roemisch's share of the loss and seeking a judgment against Roemisch therefor, after crediting the amount of the note. The trial court found that the parties had not entered into an agreement of joint adventure and rendered judgment for Roemisch on the note. The Machine Company has appealed from the judgment and from the order denying its motion for a new trial, insisting on its right to an affirmative answer to the question posed in the opening sentence of this opinion.

Roemisch, Perry and W. H. Kelsey, president of the Machine Works, all testified briefly at the trial. With Kelsey on the stand under cross-examination, Roemisch's counsel called for the production of the contract between the Machine Works and Morrison-Knudsen, and the court remarked that it would order the production of the contract unless the information desired could be adduced by parol. After developing the fact that the Machine Works and Morrison-Knudsen were the sole parties to the contract, the matter of its production in court was dropped. The work was done pursuant to plans and specifications furnished Perry on the job. Perry took his orders from Kelsey and received his pay from the Machine Works. A special account was set up in the name of the Machine Works, and Perry had full charge of this account. Roemisch was never at the job

and it does not appear that he saw or had knowledge of any of the receipts under the contract, that he ever saw the contract, that he knew anything about any of the disbursements aggregating some $84,000, or that he saw any of the books or accounts. Roemisch did two things. (1) He procured the contract. Whether he had it "in the bag" before the agreement with the Machine Works and Perry, and what means or influence he used to get it, do not definitely appear. (2) He lent $2,500 to the Machine Works and took its 60 day note. He was to be repaid with interest within 60 days—not out of any proceeds of the construction contract, not to any extent by Perry, not by the three (including himself) who were thus associated, but by the Machine Works alone. Thus, he was to be repaid within 60 days the money personally advanced to the Machine Works for the latter's prosecution of a construction contract that required about nine and one-half months to complete.

Defendant's position is simply this: (1) The agreement for the equal division of profits, for the performance of the construction contract by the Machine Works, for the superintendence of the job by Perry, and Roemisch's promise to advance money to the Machine Works "to assist in financing payrolls and expenses" and his having procured the contract in the first place, constituted the contract one of joint adventure; (2) such contracts are governed by the law of partnership; (3) under our statute (the Uniform Partnership Law) all partners must contribute to the losses; and (4)—to make this logical sequence applicable—"It is not the intention of the parties, but the legal effect of the agreement which is controlling." The fallacy of this position is that we cannot determine the rights of the parties to this contract simply by giving it a name. Nelson v. Abraham, 29 Cal.2d 745, 177 P.2d 931. As with other contracts, the intention of the parties (no rights of third parties being involved) must be determined from the instrument itself if this can be done. "There is no principle of hermeneutics of peculiar application to articles

of copartnership. They are construed by the ordinary rules for interpreting written contracts." Walker v. Patterson, 166 Minn. 215, 208 N.W. 3, 7. See also Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250, and Fuller v. Laws, 219 Mo.App. 342, 271 S.W. 836.

The contract says simply this:

1. The profits of the construction of the building by defendant for Morrison-Knudsen are to be equally shared by defendant, plaintiff and Perry.

2. Defendant "assumes responsibility for performance."

3. The consideration for Perry's getting a third of the profits is his agreement "to diligently superintend all construction work."

4. The reason why plaintiff gets a third of the profits is that he procured the contract and agrees to lend defendant not to exceed $5,000 "to assist in financing payrolls and expenses."

The brief testimony adduced adds the following information with reference to the foregoing: 1. There were no profits, but a loss of $16,313.56. 2. Defendant did assume full responsibility for the performance. Neither the construction contract nor the plans and specifications nor any details of the construction appeared in the evidence other than the general statement of Mr. Kelsey, president of the Machine Works, that "we carried out a contract there which calls for the sheathing and covering of all their new buildings." This, as noted, involved the expenditure of some $84,000 for labor and materials and occupied some nine and one-half months. The site was Plaster City, California. 3. Perry superintended the job. His salary was paid by the Machine Works. He got orders from Kelsey, an officer of that corporation, who was his superior on the job and who had full control. A special account was set up in El Centro, California, in the name of the Engineering Works of which Perry had full charge, and apparently his salary and all other disbursements, aggregating the $84,000,

were paid out of this account. If any books were kept, there is nothing in the evidence to indicate that Roemisch ever saw them or had any knowledge of them. They were not produced in court. No accounting was ever made. None of the parties sought an accounting. 4. Roemisch did nothing but get the contract. He advanced, not to the venture but to the Machine Works, $2,500. Nor was this money to stay in the venture. As has been seen, it was repayable by the Machine Works to Roemisch June 15, 1947, although the contract was not completed till the latter part of January, 1948. Presumably progress payments under the contract provided sufficient financing to make further loans from Roemisch unnecessary. For all that appears in the evidence, the Machine Works might have had on hand, when entering into the contract, the major part of the materials for "the sheathing and covering" of the buildings for Morrison-Knudsen Company, and nothing appears with reference to prices at which such materials were or had been acquired and prices at which they were charged to the job.

■ It is of some significance that the Machine Works deliberately chose not to plead *in haec verba* the very brief written contract, but to plead its legal effect, denominating it "an agreement of joint adventure *by the terms of which* the parties hereto and the said Ray C. Perry undertook to perform a certain construction job with Morrison-Knudsen Company. * * *" Defendant further alleged that *"by the terms"* of said agreement the said parties "were to share in the profits *and losses* of the said contract, share and share alike. * * *" (Emphasis added.) Defendant did not state whether the contract thus pleaded was written or oral. Conceding the right of defendant to plead its alleged contract by its legal effect, we are nonetheless faced with the fact that defendant alleged that such contract *by its terms* provided (1) that the three parties undertook to perform the construction job, and (2) that they were to share the losses. These *terms,* on the contrary, were not in the

written contract. Yet when the court made its findings to the simple effect that the parties had not entered into an agreement of joint adventure, defendant moved to modify the same, not by incorporating the written agreement (as it would have had a perfect right to do) but by incorporating the identical allegations of the answer, which motion the court quite properly denied. If, as stated in defendant's opening brief, "the joint adventure agreement speaks for itself," it could have been asked to speak for itself in defendant's answer and in its requested findings.

Defendant places great reliance on Botsford v. Van Riper, 33 Nev. 156, 110 P. 705; Miller v. Walser, 42 Nev. 497, 181 P. 437; Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L.R.A., N.S., 1046, Ann.Cas.1916A. 1202, all defining situations in which the parties were held to have entered into a joint adventure agreement under which their rights and liabilities are determined by the principles governed by partnership. Reference is also made to discussions of this subject in the annotations found at 48 A.L.R. 1055 and 63 A.L.R. 909. Nothing will be gained by an extensive discussion of the Nevada cases or the cases contained in the annotations. While they support the general propositions of law advanced by appellant and while they contain many examples of agreements that were construed to constitute joint adventures under which the parties were liable for losses as well as entitled to profits, they likewise contain many examples of contracts not having such effect. They also definitely establish the principle that while in the construction of a contract a provision for the sharing of profits is important, there must be something more than this to constitute it a contract of joint adventure. See cases cited in 63 A.L.R. 911. In like manner many of these cases hold that while a provision for sharing losses is important in construing the agreement, it likewise is not essential. In the instant case the main affirmative and outstanding covenant is that the parties "mutually agree to a three way division of profits over

and above all expenses incurred in the performance" of the contract between the Machine Works and Morrison-Knudsen. Nothing is said with reference to losses. The agreement to share the profits is indeed important. So is the absence of an agreement to share the losses. Neither is conclusive upon us in our construction of the contract. We are confronted inevitably with the necessity of determining the intention of the parties. First National Bank of Eugene v. Williams, 142 Or. 648, 20 P.2d 222. The trial court found that they had not entered into an agreement of joint adventure, and concluded simply that Roemisch was entitled to judgment on his note. As we have indicated, the question is not to be solved by giving the contract a name nor by refusing to give it a name. Under contracts of joint adventure, as well as under partnership contracts, it is entirely competent for the partners to determine by agreement as between themselves, the basis on which losses shall be borne. They may agree to bear such losses on an equal basis or in the same proportion as provided for in division of profits or limiting or eliminating the liability of particular partners as to losses. 47 C.J. 791, Partnership, sec. 233; Whetstone v. Purdue, 107 Or. 86, 213 P. 1014. Every lead pursued leads to the conclusion that there is no one exclusive test, that no single arbitrary test is conclusive, that the relationship depends upon the intention of the parties and that every case must stand upon its own merits.

■ Appellant relies upon various provisions contained in Nevada's Uniform Partnership Act. Thus it cites N.C.L., sec. 5028.06 to the effect that "in determining whether a partnership exists, these rules shall apply: * * * (4) The receipt by a person of a share of the profits of a business, is prima facie evidence that he is a partner in the business * * *." But Roemisch received no share of any profits. There were no profits. Roemisch was indeed to receive interest on his loan to the Machine Works, but the same code section provides that even the receipt of the share of the profits carries no

inference of partnership if such payment is received as interest on a loan. Appellant further relies on N.C.L., sec. 5028.05 defining a partnership as "an association of two or more persons to carry on as co-owners a business for profit." No co-ownership appears. Appellant further relies on N.C.L., sec. 5028.17, which provides in part: "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules: * * *." These rules include the right of contribution for a share of the losses. Respondent in turn calls our attention to sec. 5028.06 (3) which reads: "The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." The California Uniform Partnership Act is virtually identical with ours. See Civil Code, Cal., sec. 2395 et seq. Construing that act the Supreme Court of California in Spier v. Lang, 4 Cal.2d 711, 53 P.2d 138, 141, said: "The main reliance of the plaintiffs is on the provision of the contract that the defendants were to share in a division of the profits. But this feature of the agreement has long been held not to require a conclusion that a partnership relation existed where also there was no joint participation in the management and control of the business, and the proposed profit-sharing was contemplated only as compensation or interest for the use of the money advanced. (Citing numerous California cases.) The foregoing conclusion and cited cases are in conformity with the definition of the partnership relation contained in the Civil Code (section 2400, Stats. 1929, p. 1898, formerly contained in section 2395), which includes as an essential element the joint participation in the conduct of the business. The presence of the same element is necessary to constitute the parties joint adventurers." (Citing numerous cases.) This is in line with numerous other cases to the effect that when the profit sharing is mainly by way of compensation, the partnership relationship is

not created. Thus in Griffiths v. Von Herberg, 99 Wash. 235, 169 P. 587, 588, the court said: "The mere fact of a share in profits of itself constitutes neither a partnership nor a joint adventure. There must be other facts showing that relationship to have been the intent of the parties, or such as to estop denial of it as against third parties. There is no question of third parties here, but one simply between the parties, and we think the allegations show that the contract was one of employment as a broker." See also Atlas Realty Co. v. Galt, 153 Md. 586, 139 A. 285.

While numerous additional cases are cited by respondent holding, like Spier v. Lang, supra, that joint participation in the management and control of the business is necessary to constitute the partnership relation, our conclusions in this case are not based on the absence of Roemisch's participation in the construction contract except insofar as that situation throws light upon the intention of the parties as to the sharing of losses. We mention this in view of appellant's argument, and cases cited in support thereof, to the effect that actual management may be delegated to a single partner or co-adventurer without destroying their relationship as co-adventurers or partners. See 47 C.J. 784, Partnership, sec. 226.

Roemisch contends that in any event the testimony of the parties clearly indicated their relationship; that the most that can be said is that there was some conflict in such testimony, and that as this was resolved by the trial court in his favor, this court is not at liberty to disturb it. It is true that Spier v. Lang, 4 Cal.2d 711, 53 P.2d 138, holds that whether the agreement to share profits is merely to provide a measure of compensation for services or for the use of money, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute the undertaking a partnership or a joint venture, presents primarily questions of fact. The California court later, in Nelson v. Abraham, 29 Cal.2d 745, 177 P.2d 931, seemed to

approve the rule that it was a mixed question of law and fact.[1] In our construction of the contract itself and our view of the mutual relations of the parties as disclosed by the testimony, we conclude that the agreement to share profits was to provide compensation to Roemisch for obtaining the contract. Whether it also compensated him for making the loan to the Machine Works or whether, as maintained by respondent, the agreement to make that loan was an independent covenant compensated by the payment of interest, does not affect our conclusion. Nor need we place this case in the category of the so-called brokerage contracts, although it is closely analogous thereto.

■ We conclude that the findings and judgment of the trial court holding in effect that the agreement was not such a contract of partnership or joint adventure as to make Roemisch liable for contribution for the losses of the Machinery Works in carrying out its construction contract with Morrison-Knudsen Company were correct.

The judgment and the order denying defendant's motion for a new trial are hereby affirmed with costs.

HORSEY, C. J., and PRIEST, District Judge, concur.

EATHER, J., being absent on account of illness, the Governor assigned Honorable D. W. PRIEST, judge of the Third Judicial District, to act in his place.

---

[1] It is true that this court said in Botsford v. Van Riper, 33 Nev. 156, 197, 110 P. 705, that the whole case resolved itself into a pure question of fact, but this referred to the question as to whether or not the agreement, an oral one, had been entered into by the respective parties.