CENTRAL BANK, N.A., Appellant and Cross-Respondent, *v.* DONALD W. BALDWIN; NOVA J. BALDWIN; WILLIAM A. TEIPNER; MARTHA S. TEIPNER; JACK S. SARGENT; GWEN W. SARGENT; ROBERT M. STAMPFLI, and PATRICIA STAMPFLI, Respondents and Cross-Appellants.

No. 9250

August 28, 1978                    583 P.2d 1087

[Rehearing denied December 7, 1978]

*Charles E. Springer,* Reno, for Appellant and Cross-Respondents.

*John J. McCune,* Reno, for Respondents and Cross-Appellant.

## OPINION

*Per Curiam:*

Respondents were various purchasers of several apartment complex projects located in Arizona and appellant Central Bank was successfully sued by respondents as a joint venturer in these projects. Appellant claims no joint venture existed and urges reversal of the judgment.

Testimony indicated that Sam J. Harris, a California building contractor, was approached by James Nichols, then vice-president and mortgage officer of Central Bank, to "joint venture" some construction projects. The action of Nichols was approved by Michael Rafton, president and chairman of the board of Central Bank. Central Bank was precluded by law from loaning money to any entity in which it had a stock equity interest. Appellant Bank therefore arranged to have its wholly owned subsidiary Bankers SBIC form with Harris a new construction corporation, Greater Sierra Construction Company. The stock of Greater Sierra was divided equally between Harris and SBIC. The majority of the directors on the SBIC board were also directors of Central Bank and at least one director of Greater Sierra was also a director of SBIC and either a director or legal counsel for Central Bank.

Testimony indicated that the principal motivation for forming Greater Sierra was to enable Central Bank to share profits of the venture in addition to the customary bank earnings pursuant to outstanding loans.

Central Bank, Greater Sierra, SBIC, and Harris engaged in several construction projects. Harris and Greater Sierra were required to obtain construction loans from no other source

than Central Bank, and their applications for financing always bypassed the conventional loan processing at Central Bank and were given special attention. Greater Sierra had only one bank account at Central Bank in which it deposited all down payments received from the various projects.

Greater Sierra and Harris entered into construction contracts with the various respondents for two large apartment complexes in Arizona. Harris refused to sign the substitute contract submitted by the respondents but complied after an officer of Central Bank reviewed the contracts and ordered Harris to sign. During negotiations, this bank officer assured respondents that Central Bank would assure quality of construction through its inspections. The title company documents, however, specified that the respondents would inspect the construction projects themselves. Central Bank nevertheless conducted inspections, but neither the respondents, Harris, nor Greater Sierra ever saw those inspection reports.

During the course of several construction projects, Greater Sierra took a large number of promissory notes issued incidental to second trust deeds. These "seconds" constituted the assets and represented the profits of Greater Sierra. When operating capital became short and Harris wanted to discount some of the "seconds" to obtain necessary cash, it was Central Bank which prohibited Greater Sierra from so obtaining the cash. Eventually Central Bank established a line of credit for Greater Sierra and demanded delivery of the "seconds" to it. The line of credit was approximately two million dollars, but the value of the "seconds" and some real property deeded to Central Bank approximated seven million dollars.

The Comptroller of the Currency requested Central Bank to have SBIC reduce its ownership in Greater Sierra because it appeared under new regulations that Central Bank was loaning money to an affiliate in violation of law. SBIC, with four of its six directors also sitting as directors of Central Bank and another SBIC director being an employee of the Bank, reduced its shareholding in Greater Sierra from fifty percent to twenty-five percent. Testimony indicated that the Comptroller of the Currency had no jurisdiction over SBIC which could have refused to reduce its holding but for the control of Central Bank.

Eventually the apartment complexes purchased by respondents proved to be defective in construction, and Harris, Greater Sierra, and Central Bank were sued as joint venturers. Judgment was entered against all defendants jointly and severally, but only Central Bank prosecutes this appeal. Respondents have cross-appealed several conclusions of law which held that the parole evidence rule precluded evidence of oral agreements

contradicting express written terms in the title documents pertaining to the inspection of the construction project.

The issue before us is whether the trial court erred in finding that Central Bank was a joint venturer and thus liable to suit.

Appellant contends it has no liability for two reasons. It claims that NRS 41.590 was enacted expressly to provide protection for lenders against actions arising from defective protection or lenders against actions arising from defective property acquired with the borrowed funds. Central Bank argues that this provision was specifically enacted in consequence of the landmark case Connor v. Great Western Savings and Loan Ass'n, 447 P.2d 609 (Cal. 1968). NRS 41.590, enacted five years after *Connor,* is set forth below.[1]

Even if appropriate, however, the statute is not applicable because the cause of action arose and the complaint filed prior to the effective date of the provision. Miller v. Ashurst, 86 Nev. 241, 468 P.2d 357 (1970). Moreover, the statute itself contains an excepting clause that liability will not attach "unless the loss or damage is the result of some other action or activity of the lender than the loan transaction." Appellant claims it cannot be held liable because it was not involved in any activity other than the lending of money. The trial court, however, made findings of fact that Central Bank was engaged in a joint venture for profit because its subsidiary SBIC owned half the stock of Greater Sierra and because it approached Harris with an offer to joint venture some construction projects. We agree.

Where there is substantial evidence to support the findings and judgment of the trial court, this Court will not disturb such findings and judgment on appeal. Davis v. Gomez, 92 Nev. 629, 555 P.2d 1228 (1976); J&J Building Contractors Inc. v. Savage Construction Inc., 92 Nev. 590, 555 P.2d 488 (1976). The trial court could have reasonably found under all the circumstances that a joint venture was formed between Central Bank and Harris to form Greater Sierra and engage in substantial construction projects. *See,* Shell Oil Company v. Prestidge, 249 F.2d 413 (9th Cir. 1957); Walsh Construction Company v. Church, 247 F.Supp. 808 (S.D. N.Y. 1965); Nels E. Nelson

---

[1]A lender who makes a loan of money, the proceeds of which are used or may be used by the borrower to finance the design, manufacture, construction, repair, modification or improvement of real or personal property, shall not be held liable to the borrower or to third persons for any loss or damage occasioned by any defect in the real or personal property so designed, manufactured, constructed, repaired, modified or improved or for any loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of such real or personal property, unless the loss or damage is the result of some other action or activity of the lender than the loan transaction.

Inc. v. Tarman, 329 P.2d 953 (Cal. App. 1958); Holtz v. United Plumbing & Heating Co., 319 P.2d 617 (Cal. 1957); L.V.M.&E. Works v. Roemisch, 67 Nev. 1, 213 P.2d 319 (1950).

Central Bank's references to the alter ego doctrine and to a choice of law consideration are not properly before the court as these issues are raised for the first time on appeal. Young Elec. Sign Co. v. Erwin Elec. Co., 86 Nev. 822, 477 P.2d 864 (1970). Because of our disposition of this case, we need not consider respondents' cross-appeal.

The judgment of the trial court is affirmed.