TRUSTEES OF the BRICKLAYERS AND ALLIED CRAFTSMEN LOCAL NO. 3 HEALTH AND WELFARE TRUST, et al., Plaintiffs,

v.

REYNOLDS ELECTRICAL & ENGINEERING CO., INC., et al., Defendants.

And All Related Cross–Claims.

And all Related Third–Party Claims.

No. CV–S–82–345–RDF(RJJ).

United States District Court,
D. Nevada.

Sept. 10, 1990.

Lionel Sawyer & Collins, Las Vegas, Nev. by Evan J. Wallach, for plaintiffs.

Arthur L. Williams, Jr., Las Vegas, Nev., for Reynolds Elec. & Engineering.

John R. Lusk, Las Vegas, Nev., for Structures Mideast Corp.

Wright, Shinehouse & Stewart, Las Vegas, Nev. by Monte M. Stewart, for defendant 3rd party defendant, Ins. Co. of North America.

Jim Mahan, Las Vegas, Nev., for USG Interiors.

## AMENDED ORDER

ROGER D. FOLEY, District Judge.

Reynolds Electrical and Engineering Co. (Reeco) seeks Summary Judgment (# 168) on its Second Amended Cross–Claim (# 154) against Cross–Defendant USG Interiors (Interiors). Interiors received two extensions of time to file an Opposition with the last extension making the Opposition due on October 9, 1989. (# 175) Interiors missed this October deadline, however, and instead filed its Opposition and a Counter–Motion for Summary Judgment on November 15, 1989. (# 179) Reeco seeks to strike this Opposition (# 180) and opposes Interior's Counter–Motion for Summary Judgment. (# 182)

Also, Insurance Corporation of North America (INA) seeks Summary Judgment (# 178) on Reeco's Third Party Complaint (# 93), which Reeco opposes. (# 184).

This court heard oral argument on these motions on May 16, 1990. At that time, all parties agreed that a judgment in this case may be decided on motion rather than by trial. Although Structures Mideast Corporation (SME) is not a party to these motions, SME was represented at the hearing by Attorney John Lusk.

On June 26, 1990, this court notified SME that Reeco's Cross–Claim against SME would be decided by this court sua sponte. (Doc. 205). SME filed a response

stating that Summary Judgment should be granted in favor of SME because Reeco released SME from all contract claims except those based upon the warranty clause.[1] (Doc. 206)

## FACTS

Reeco is a cost-plus-fixed-fee contractor for the United States Government, acting through the Department of Energy. In this capacity, Reeco manages, operates and maintains the facilities at the Nevada Test Site in Tonopah, Nevada (Test Site). In order to carry out its duties, Reeco entered into labor agreements with the Plaintiffs, Trustees of the Bricklayers and Allied Craftsmen Local No. 3, et al. (hereafter referred to as the Trustees).

On November 10, 1980, Reeco entered into a contract[2] with Structures Mideast Corporation (SME) to construct the sleeping quarters, cafeteria, and recreation facilities for personnel assigned to Tonopah, Nevada. This contract required SME to (1) comply with the labor agreements between Reeco and the Unions[3] and (2) to acquire a performance and payment bond with the United States and Reeco as joint-obligee.

SME was unable to obtain the required bonds from INA, the surety, and solicited D.A.B. Holding Corporation's (DAB) assistance. In a letter to INA, SME and DAB represented themselves as being in a joint venture in order for SME to obtain the necessary bonds for its contract with Reeco.[4] However, other agreements and events seem to limit DAB's liabilities to that of an indemnifier rather than those of a joint venturer.[5] On November 20, 1980, INA issued the payment and performance bonds after relying on the bond applications in which DAB and SME signed as indemnitors, agreeing to be jointly and severally liable. (Doc. 168) The actual bonds, however, did not list DAB. Instead, the bonds listed SME as the principal, INA as

1. In support of this, SME points to the Final Acceptance letters issued by Reeco, dated September 23, October 9, and October 15, 1981, and a Release Statement issued by Reeco on April 17, 1982. Doc. 206.

2. Contract No. 1002–CUC–81.

3. See Rider No. 9 and Contract No. 1002–CUC–81.

4. In this letter, DAB states that it has a financial interest in SME's venture with Reeco. The letter goes on to state that "For several reasons it is not possible for the undersigned, other than Structures Midwest Corporation to appear in the contract documents, or as principal in any bond. Such other undersigned expect, however, to be of assistance to Structures Mideast Corporation in the prosecution of this work, to share in the profits, and if necessary, to take care of any losses. As consideration and an inducement to you to write the necessary performance and payment bonds in connection with this contract, all of the undersigned are advising you that our position in the matter is that of joint venturers and that you may consider us as such just as though we were actually named in the various documents described above. This letter is not intended to limit the indemnity agreements we have, or will give you, but it is intended to serve as a joint venture agreement and to set forth our position as joint venturers in this enterprise." The letter is signed by Kevin Brown, President of SME and by his father, Donald Brown, the President of DAB. (Doc. 168, Exhibit 3)

The court notes that although this letter is dated December 15, 1980, the contents of this letter indicate that it was written prior to the issuance of the bonds by INA on November 20, 1980. Another indication that the letter was written in November and at the same time that DAB and SME applied for the bonds is that the person who attested the Browns' signatures on the letter is the same person who attested their signatures on the bond applications dated November 20, 1980. (Doc. 168 Exhibit 4 and 5)

DAB later merged into USG Interiors. USG Interiors admits that Reeco had no knowledge of this joint venture letter until June 6, 1988. (Doc. 179 p. 10)

5. The following seem to indicate that DAB wished to assume the role of an indemnifier: (1) the *November 20, 1980, DAB Board resolution* states that DAB agrees to execute an indemnity agreement in favor of INA with respect to the performance and payment bonds in consideration for a share in SME's profits in the contract between SME and Reeco (Doc. 179 Ex. A); (2) in the *December 17, 1980 Agreement between SME and DAB*, DAB agrees to execute an indemnity agreement (Doc. 179 Ex B); and (3) the *June 29, 1981, Agreement between SME, DAB and INA*, came into existence after SME fell behind on its financial obligations under the contract with Reeco and claims were made against the INA bonds by subcontractors. (Doc. 179 Ex. C)

the surety and the United States and Reeco as joint-obligee.

On January 15, 1981, SME subcontracted some of the work at the Test Site to W.T. W.T., Inc. (WTWT). Under the terms of this subcontract, WTWT agreed to abide by the labor agreements entered into between Reeco and the Unions. During March and April of 1981 WTWT failed, however, to remit contractually provided pension contributions to the Trustees.[6]

On October 2, 1981, the Trustees filed a claim against WTWT in the Eighth Judicial District Court of the State of Nevada for contributions and other amounts owed. On November 9, 1981, a default judgment was entered in favor of the Trustees.[7] On February 18, 1982, the Trustees made demand on INA to recover the unpaid pension funds under the bonds.[8] (Doc. 187) Later, in order to collect the judgment against WTWT, the Trustees made demand on

SME and Reeco to pay the judgment; both refused to do so. Therefore, in June of 1982, the Trustees filed a complaint against Reeco and SME in state court based on Nev.Rev.Stat. § 608.150[9].

On July 2, 1982, Reeco removed this case to federal court under 29 U.S.C. § 185, 40 U.S.C. § 270a and 28 U.S.C. § 1441(b). After removal, this court allowed the Plaintiff to file an Amended Complaint alleging jurisdiction under ERISA, 29 U.S.C. § 1132(g)(2) and 29 U.S.C. § 1132(e) and to name INA as a defendant[10]. Additionally, Reeco filed a Cross–Claim against SME and a Third–Party Complaint against INA[11]. On April 15, 1985, this court granted a Motion for Summary Judgment for the Trustees and found SME and Reeco jointly and severally liable for the amount of $120,235.21.[12] Reeco subsequently paid this judgment and now seeks to collect the money it paid.

**6.** WTWT alleged that they were without sufficient funds to pay the pension benefits because SME forced them off the job and refused to pay any further sums due and owing.

**7.** The judgment against WTWT allowed for $64,046.59 in unremitted benefits for the months of March and April of 1981, for $5,404.66 in liquidation damages and for $2,000 in attorney's fees.

**8.** After receiving the letter from the Trustees, INA sent a letter to Donn, Inc., (Donald A. Brown was involved in SME, DAB, Donn, Inc. and Westlake Land Corporation—see footnote 34) and demanded that the judgment be paid if there were no defenses and that actions be taken to protect INA from liability. Doc. 184 Ex. 4. It is not clear what happened between INA and the Trustees after this. However, INA did not pay the Trustees. Later, the Trustees dismissed their complaint against INA when Reeco paid the judgment.

**9.** "(1) Every original contractor making or taking any contract in this state for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and be held liable for the indebtedness for labor incurred by any subcontractor or any contractor acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapter 616 of NRS.

(2) It shall be unlawful for any contractor or any other person to fail to comply with the

provisions of subsection 1, or to attempt to evade the responsibility imposed thereby, or to do any other act or thing tending to tender nugatory the provisions of this section.

(3) Every person violating any of the provisions of this section shall be punished by a fine of not more than $250 for each act. In addition thereto, the district attorney of any county wherein the defendant may reside or be found shall institute civil proceedings against any such original contractor failing to comply with the provisions of this section in a civil action for the amount of all wages and damage that may be owing or have accrued as a result of the failure of any subcontractor acting under the original contractor, and any property of the original contractor, not exempt by law, shall be subject to attachment any execution of the payment of any judgment that may be recovered in any action under the provisions of this section."

**10.** The basis for the Trustees claim against INA is the Miller Act.

**11.** Reeco's Third–Party Complaint should be a Cross–Claim and is still improperly pled today.

**12.** First the Court found SME and Reeco jointly and severally liable for the $64,046.59 state judgment against WTWT for delinquent contributions. Then the court added $17,146.74 for interest on the delinquent amount. An additional $17,146.74 of interest was added pursuant to the double interest provision of 29 U.S.C. § 1132(g)(2)(C). The court also added $18,547.50 for attorney fees, $2,937.64 for costs and $410.00 for audit fees.

SME [13] is allegedly without assets to pay Reeco. However, on June 16, 1988, Reeco learned for the first time that SME and DAB entered into a joint venture agreement in 1980 relating to the contract between Reeco and SME for work at the Test Site.[11] Although Reeco would like to collect from DAB, DAB merged into USG Interiors, Inc., (Interiors) in April of 1986.[15] Therefore, Reeco now seeks to collect this money from Interiors.[16]

Interiors brings a Counter–Motion for Summary Judgment and argues that (1) a joint venture did not exist between DAB and SME and (2) that Reeco's claim against Interiors is barred by the statute of limitations. (Doc. 179)

INA, the surety, also brings a Motion for Summary Judgment and argues that judgment is warranted in its favor because (1) Reeco's Third–Party Amended Complaint fails to allege the requisite facts to state a claim under the Miller Act; (2) Reeco's cause of action is exclusively governed by the Miller Act and a claim under the performance bond or the payment bond is barred by the Miller Acts one-year statute of limitations; and (3) even if Reeco has a claim against INA, Reeco released or discharged INA to the extent of $159,099.05

pro tanto when Reeco disbursed $159,-099.05 to SME knowing that claims were being asserted by the Trustees for unpaid contributions to the pension fund.[17]

## DISCUSSION

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The nonmoving party has the burden of "showing that there is a genuine issue for trial" by presenting specific facts beyond the pleadings. Fed.R. Civ.P. 56(c); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The court may grant summary judgment for the non-moving party if the non-movant is so entitled. *6 Moore's Federal Practice*, § 56.12 (1988). "Rule 54(c) gives the court

---

**13.** Reeco's Cross–Claim against SME states that under the contract between Reeco and SME, Reeco is entitled to be held harmless from any liability from third parties; Reeco seeks indemnity from SME for any judgment by the Trustees against Reeco. (Doc. 23; Doc. 154) On December 5, 1988, Reeco amended its Cross–Claim to include USG Interiors. (Doc. 154) This is the first time that USG Interiors or DAB Holding Company are mentioned in this case. There is no record that DAB was ever served or named a defendant to this action. Therefore, procedurally, Interiors would be a third-party rather than a cross-defendant.

**14.** This information was learned through documents obtained from INA during discovery.

**15.** This merger took place after this court rendered its judgment against SME and Reeco and during the time Reeco was attempting to collect from SME. Interiors was aware of this judgment when the merger took place and agreed to assume all of SME's liabilities. (Doc. 168 Ex. 8 and Ex. 9)

**16.** Reeco also seeks to collect from INA on a Miller Act claim under the performance and

payment bonds. Reeco's current Motion for Summary Judgment is, however, only against Interiors.

**17.** Further procedural history of this case shows that this court denied, by minute order but without prejudice, Motions for Summary Judgment by Reeco against SME and INA in September of 1985. (Doc. 88) At this time, INA's Countermotion for Summary Judgment against Reeco was denied without prejudice. (Doc. 88)

When the above motions were denied, Reeco's Third–Party Complaint against INA was only a claim as a joint-obligee under the payment bond. (Doc. 24) Reeco subsequently amended it's Third–Party Complaint against INA to include a claim as a joint-obligee under the performance bond. (Doc. 93) After this, in July of 1986, Reeco also amended its Motion for Summary Judgment against INA based on liability on the performance bond. (Doc. 97) This court denied this amended motion by minute order on January 11, 1988. (Doc. 118)

Plaintiff's claim against INA was dismissed with prejudice on January 1, 1988. (Doc. 119).

the power to enter the final judgment to which the prevailing party is entitled, even if the party has not demanded such relief in his pleadings." *Id.*

Additionally, the court may dispose of claims sua sponte. When a case is disposed of sua sponte, the "litigant is entitled to reasonable notice that the sufficiency of his or her claim will be in issue." *Portsmouth Square, Inc. v. Shareholders Protective Committee,* 770 F.2d 866 (9th Cir. 1985).

## I. DOES SME HAVE A CONTRACTUAL DUTY TO INDEMNIFY REECO?

■ There are three reasons why SME is liable to Reeco for the unremitted trust funds. First, this court held that SME was jointly and severally liable with Reeco for the delinquent trust funds in a previous judgment. (Doc. 57) Second, the contract between SME and Reeco has a "Save Harmless" clause, making SME liable for "any claim ... commenced by any third person against the Government or the Contractor on account of or arising out of operation under this subcontract." (Doc. 184 Ex. 14 Clause 36).

■ Third, SME's contract with Reeco required SME "to pay the exact amounts listed in said Labor Agreements for hourly wages, fringe benefits, and subsistence ... (and) to comply strictly with all other terms and conditions of said Labor Agreements." (Doc. 184—Rider 9) SME's failure to pay the delinquent trust funds owed by WTWT is a breach of that agreement. "A failure, without justification, to perform all or any part of what is promised in a contract, is a breach thereof." *Restatement of Contracts,* § 314 (1932). Because of these agreements and the judgment, SME is liable to Reeco for the delinquent trust funds.

The undertaking of INA as surety on the performance and payment bonds was limited to SME's fulfilling the requirements of the contract. Since this court finds that SME failed to fulfill its agreements with Reeco, INA may be held liable also.

## II. IS REECO'S CLAIM AGAINST INA A CLAIM UNDER THE MILLER ACT?

### A. Who is the Prime Contractor for Miller Act purposes?

■ The relationship between Reeco and the United States government at the Nevada Test Site is a novel situation. Although Reeco is an independent contractor, Reeco sometimes acts as an agent of the United States. In this situation, the United States contracted with Reeco to manage, operate and maintain the facilities at the Test Site. Then Reeco hired SME to build some structures on the Test Site; SME then hired WTWT to do the work. It is important to note that Reeco did not obtain a performance bond and a payment bond on behalf of the United States. Rather, SME obtained the bonds on behalf of the United States and Reeco as joint-obligee.

In *U.S., Hillsdale Rock, etc. v. Cortelyou & Cole, Inc.,* 581 F.2d 239 (9th Cir. 1978), a payment bond was issued jointly to the United States and Stanford University by Cortelyou & Cole (C & C) and United Pacific Insurance Group for construction in connection with a contract between Stanford and the Atomic Energy Commission (AEC). Subsequently, C & C contracted with Bottari; Bottari then contracted with Hillsdale to purchased materials for the job. Bottari did not pay Hillsdale, however, and Hillsdale sued on the bond. In *Hillsdale,* the Ninth Circuit found that "Stanford ... although nominally the prime contractor and in privity with the United States was really acting as an agent of the AEC." *Id.* at 241. The court noted that "Stanford performed none of the construction functions, but acted in the place of the AEC to develop procedures and to contract for the construction ... In such circumstances, ... C & C was, in fact, the 'contractor' contemplated by the Miller Act." *Id.* See also: *United Bonding Ins. Co. v. Catalytic Const. Co.,* 533 F.2d 469 (9th Cir.1976); *Fidelity and Deposit Company of Maryland v. Harris,* 360 F.2d 402 (9th Cir.1966); *United States v. Harder Industrial Contractors, Inc.,* 225 F.Supp. 699 (D. Oregon 1963); Cf *J.W. Bateson Co. v. Board of Trustees,* 434 U.S. 586, 98 S.Ct.

873, 55 L.Ed.2d 50 (1978) (where prime contractor took out payment bond).

In this instance, for purposes of the Miller Act, Reeco acts as an agent of the United States.[18] Therefore, SME is the prime contractor and WTWT is the subcontractor.

### B. Purpose of the Miller Act

In this case, the pertinent section of the Miller Act is § 270a, which provides that:
(a) Before any contract, exceeding $25,-000.00 in amount for construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds which shall become binding upon the award of the contract to such person, who is hereafter designated as "contractor":
(1) A performance bond ... for the protection of the United States (and)
(2) A payment bond ... for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract ...

The Miller Act protects "persons who have furnished labor or material to contractors or subcontractors engaged in the construction, alteration, or repair of any ... public work of the United States." *4 McBride, Government Contracts*, § 49.320 (1989). "The right given to suppliers of labor and materials to sue contractors and subcontractors in the United States courts for unpaid supplies or services is a right given by statute, and the remedy under the Act is exclusive. The law is to be construed liberally, and it is designed to protect those who cannot take advantage of state lien laws because of the presence of the United States Government in the transaction. Consequently, the bond required by the Miller Act is in lieu of state liens." *Id.* § 49.310[5]. "Exclusive remedy, in the sense used in this paragraph, means that any suit on a bond furnished in accordance with the Miller Act must meet all the requirements of the Miller Act." *Id.* § 49.310[5].

Basically, "the Miller Act ... creates a remedy for subcontractors against sureties ..." *Id.* § 49.360[2]. The right to pursue a cause of action under the Miller Act does not, however, exclude the right to pursue other causes of action for breach of contract under state law. *United States, James E. Simon Co. v. Ardelt–Horn Const. Co.*, 316 F.Supp. 254 (D. Nebraska 1970), aff'd 446 F.2d 820 (8th Cir.1971). Also, the Miller Act does not apply to a suit by a contractor against a subcontractor. *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F.Supp. 289 (S.D. New York 1987).

### C. May Reeco recover under the Payment Bond?

■ Under the Miller Act, a right of action on the payment bond exists if: (1) a person furnished labor or work or material in the prosecution of the contract; (2) formal written notice of nonpayment was given to the prime contractor within 90 days from the last day that labor or material was supplied by the person suing and (3) the lawsuit must commence, in the name of the United States, within one year from the date that the last labor or material was supplied. *McBride, supra,* at § 49.400. Notice is not required if the materialman has had a direct contractual relationship, express or implied with the prime contractor. *Roane v. United States Fidelity & Guaranty Corp.*, 378 F.2d 40 (10th Cir. 1967).

The Miller Act, by its expressed language, does not apply to Reeco under the payment bond because Reeco is a named obligee under this bond rather than a materialman or supplier to the prime contractor. Reeco may instead recover, under the Miller Act, in a cause of action under the performance bond as a joint-obligee.

### D. May Reeco recover under the Performance Bond?

■ A performance bond indemnifies an obligee against a failure by the principal to fully perform the subcontract. *Glens Falls Indemnity Co. v. United States*, 229 F.2d 370 (9th Cir.1955). Since SME failed

---

**18.** Also see Doc. 82, Affidavit of Assistant Manager for DOE stating that Reeco acted solely as a supervisory agent of the United States in this action.

to fully perform its contract with Reeco when it did not pay the pension funds owed by WTWT, Reeco is entitled to be indemnified.[19]

Under the Miller Act, the performance bond is for the exclusive protection of the United States. *United States v. Henke Construction Co.*, 35 F.Supp. 388 (D.Mo. 1940). Since Reeco acts as a supervisory agent for the United States in this action, it may recover under the Miller Act for the performance bond if the suit is brought in the name of the United States. However, even if this court were to find that Reeco was not acting as an agent to the United States, Reeco could recover for a breach of contract as a joint-obligee under the bond.

 In the Miller Act, the only notice and statute of limitations requirements for a performance bond cover suits for federal taxes.[20] One court holds, however, that if neither the contract nor the bond contain a notice provision requiring the obligee to notify the surety of the principal's default, then lack of notice does not release the surety of its obligations under the bond. *American Surety Co. v. United States*, 317 F.2d 652 (8th Cir.1963). In this case, the surety waived notice in the performance bond and no notice was required under the contract.[21] Therefore, the only applicable statute of limitations for Reeco's action relating to the performance bond is Nev.Rev.Stat. § 11.190(1)(b)[22] for a cause of action based on the contract. Using this statute, Reeco's action against INA on the performance bond is timely.

## III. IS REECO ESTOPPED FROM RECOVERING FROM INA?

 INA argues that Reeco is estopped from recovering under the bonds because

Reeco released money to SME when Reeco knew that SME had not paid the pension funds owed by WTWT. INA states that Reeco knew of WTWT's failure to pay these funds in March of 1981 and released a check to SME for $159,099.05 on March 30, 1982 nonetheless.

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security ..." *Restatement of the Law of Security*, § 132 (1941). However, "Where a surety's obligation is not conditioned upon the creditor's enforcement of other security he may have, the continuance of the creditor's right against the surety does not depend upon his using such other security she may have to satisfy in whole or in part his claim against the principal." *Id.* at comment c. In order for INA to estop Reeco, INA must show that it was prejudiced by the release. *United States v. Duby*, 201 F.2d 800 (9th Cir.1952).

Although Reeco released the money to SME, neither the performance bond nor the payment bond require Reeco to hold back payments in the event of a possible breach of the contract by SME. It seems that INA intended to look to DAB as security for the obligation instead of requiring Reeco to hold additional security. Since INA could collect from DAB (and now Interiors) and there is no showing that DAB (or now Interiors) is insolvent, INA fails to show it is prejudiced. INA did not intend to collect from Reeco in the first place.[23] INA knew about these unpaid pension benefits before Reeco disbursed the check to SME and apparently chose to do little about it. (Doc. 187)

---

**19.** See Section I of this order and Doc. 57.

**20.** 40 U.S.C. § 270a(d).

**21.** The performance bond at issue in this case is worded the same as the performance bond in *American Surety Co. of New York v. United States, supra.*, which is a breach of contract case by the contractor against its surety.

**22.** Nev.Rev.Stat. § 11.190(1)(b) requires that "an action upon a contract, obligation or liability founded upon an instrument in writing, except those mentioned in the preceding sections of

this Chapter" must be commenced within six years.

**23.** On February 26, 1982, INA sent a letter to Donn Inc., one of the companies controlled by Donald A. Brown, and demanded that Donn, Inc., take whatever steps necessary to protect INA from the judgment against WTWT. INA demanded payment of the judgment if there were no defenses and put Donn, Inc. on notice that "Should the terms of the indemnity agreement not be fully complied with and/or INA is required to expend any sums of money in this

INA also argues that Reeco released SME from further liability when it sent several letters of final acceptance.[24] "... Where the creditor releases a principal, the surety is discharged ..."[25] *Restatement of the Law of Security*, § 122 (1941).

The letters of final acceptance which Reeco sent to SME do not indicate that Reeco released SME from its duty to pay the pension payments owed by WTWT. A careful review of the "final acceptance" letters issued by Reeco to SME shows that they relate to workmanship and materials[26] supplied by SME and not to unpaid pension funds.[27] Article 36 of the construction agreement[28] between Reeco and SME states that SME agreed to save Reeco harmless "from any liability resulting from ... (SME's) operations ..."[29] and Rider 9 indicates that SME must abide by all the labor agreements. Therefore, this court finds that Reeco did not release SME from the payments owed by WTWT to the trustees.

Finally, Reeco argues that INA is estopped from asserting the defense of estoppel because SME represented that it would resolve the nonpayment problems. Reeco claims it relied on SME to its own detriment. Although SME generally denies this, SME states that it did attempt to sue WTWT for the money.[30] This court finds that it is clear from affidavits that there were discussions between SME and Reeco concerning the payment of these pension funds.

Since a surety's liability coincides with that of the principal (*San Marci & Sons, Inc. v. U.S. for the use of Oaks Construction Co.*, 313 F.2d 119 (9th Cir. 1963)), INA is liable as a surety under the bonds.

## IV. WAS THE AGREEMENT BETWEEN SME AND DAB A JOINT VENTURE OR WAS IT MERELY INDEMNIFICATION?

SME and DAB represented themselves as being in a joint venture, in a

---

matter, we will immediately engage counsel and institute every legal remedy available to us to collect all sums expended plus interest, attorney's fees, and costs." (Doc. 184 Ex. 4)

24. On October 15, 1981, Reeco sent a letter of Final Acceptance to SME stating that SME was "hereby relieved of further contractual responsibility except as provided in the warranty clause" of the contract." After sending this letter, Reeco notified SME in November of 1981 of the unremitted trust funds that were due. Then on March 30, 1982, Reeco released $159,099.05 to SME. (Doc. 192) And then on April 17, 1982, Reeco sent SME a letter stating that an audit of the subcontract files was completed and no major discrepancies were shown to exist. (Doc. 192)

25. "... unless (a) the surety consents to remain liable notwithstanding the release, or (b) the creditor in the release reserves his rights against the surety."

26. The affidavit of Wendell Marrs, Department Assistant Manager for Reeco, states: "the letters relate solely to acceptance of the workmanship and materials provided pursuant to Reeco Subcontract 1002–CUC–81." (Doc. 184 Ex. 17)

27. Also see section 11 of the contract between Reeco and SME.

28. Subcontract 100–CUC–81.

29. "SAVE HARMLESS—The subcontractor shall save harmless the Government and the Contractor from any and all liability resulting from the Subcontractor's operations under this subcontract. If any claim is made or legal proceeding is commenced by any third person against the Government or the Contractor on account of or arising out of operation under this subcontract, the subcontractor agrees to pay the amount claimed, or to assume the defense of such legal proceedings, pay all attorney's fees, costs and expenses in connection therewith, and to satisfy any judgment that may be rendered."

30. SME's Attorney John Lusk states that he had no conversations with Reeco concerning this law suit or INA's payment bond until June or July of 1982, after Reeco released the money to SME. (Doc. 80) Kevin Brown states by affidavit that he never advised Reeco that SME would satisfy WTWT's obligations to the Union trust funds. (Doc. 81) Reeco's Attorney, Arthur Williams states, however, that in June of 1981, Kevin Brown told Reeco that SME intended to sue WTWT in order to enforce their obligations to the union pension or SME would satisfy the obligations themselves. (Doc. 184) Kevin Brown admits "That in late 1981 or early 1982, Structures Mideast Corporation did sue W.T. W.T. and its principals, but determined that they were insolvent and judgment-proof." (Doc. 81).

letter to INA when applying for the performance and payment bonds which were required for the contract with Reeco.[31] Other agreements, however, seem to limit DAB's liabilities to the occurrence of the obligations of Indemnitor to the surety under the indemnity agreement.[32] Interiors claims that the December 15, 1980, letter to INA, is a fugitive document and is superseded by the other documents which clearly reflect the true intention of the parties.

Reeco argues that aside from the December 15, 1980, letter, the President of SME, Kevin Brown, was also on the Board of Directors for DAB during all pertinent times. Reeco states that Brown's testimony on deposition indicates that DAB assumed SME's losses and that a check for $159,099.05, given to SME from Reeco, was paid by SME to DAB. Also, DAB was fully cognizant of possible liability and notified Interiors of such at the time of the merger. Reeco also points out an identity of interest between SME and DAB and that both SME and DAB are controlled in part by Donald Brown.[33]

A joint venture "is a contractual arrangement in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed in profits and losses." *Bruttomesso v. Las Vegas Metropolitan Police Department*, 95 Nev. 151, 591 P.2d 254, 256 (1979). "... There is no one exclusive test ... (for determining a joint venture) ... (because) the relationship depends upon the intention of the parties and every case must stand upon its own merits." *Las Vegas Machine & Engineering Works, Inc. v. Roemisch*, 67 Nev. 1, 213 P.2d 319 (1950). In view of this, a provision for sharing losses or profits is not conclusive. *Id.* Under Nevada law joint venturers are jointly and severally liable for any matter arising out of the ordinary course of business of the joint venture. NRS 87.130; NRS 87.150.

The letter from SME and DAB to INA states that: (1) DAB will assist SME in the prosecution of the contract with Reeco; (2) DAB and SME will share in the profits; (3) DAB will take care of any losses; (4) DAB and SME's position is "that of joint venturers ..."; (5) "This letter is not intended to limit the indemnity agreements that we have ..."; and (6) "(This letter) ... is intended to serve as a joint venture agreement." This court finds that this is a joint venture agreement.[34]

The court notes, however, that Interiors presents two affidavits from other members of the board or officers of DAB which state that no joint venture agreement was intended and that DAB had no idea that it had an obligation to Reeco by contract. Additionally, Interiors' Corporate Secretary states that Interiors had no idea that it could be held liable because of a joint venture between DAB and SME. (Doc. 179

---

**31.** See footnote 4 stating pertinent parts of the letter.

**32.** See footnote 5 for a list of the other agreements.

**33.** See footnote 34.

**34.** This court also uses the deposition of SME's President, Kevin Brown, to shed light on this question of a joint venture. Kevin Brown indicates that his father, Donald A. Brown, was a shareholder, Chairman of the board and past President of SME while also being a President, Chairman of the board and founder of DAB. DAB stands for Donald A. Brown.

Donald Brown was also involved with two other corporations entitled Donn Corporation and Westlake Land Corporation. Donn, Inc. made $791,000 in advances to SME during 1981 without charging interest.

Between 1978 and 1985, Kevin Brown was an officer or/and director of DAB and was still President of SME at the time of its dissolution in 1983. Kevin Brown was Vice–President of DAB and co-chairman of Donn, Inc. at the time of DAB's merger with Interiors in 1986. Kevin Brown testifies that Donald Brown was responsible for the merger of DAB into Interiors.

Kevin Brown states that all potential losses of SME fell directly on DAB. It is interesting to note that when Reeco released a check for $159,099.05 to SME on March 30, 1982, Kevin Brown gave attorney John Lusk, power-of-attorney to cash the check and have the proceeds issued in the form of a bank or cashier's check payable to DAB. (See Doc. 182 attached exhibits)

This court also notes that Mr. Watkins, former attorney for DAB, states by affidavit that Donald Brown controlled SME and was a 26% owner of DAB. (Doc. 195)

Exhibits) In spite of this testimony, this court notes that the schedule of pending litigation presented to Interiors at the time of the merger lists two potential causes of action. The first cause of action describes Reeco seeking indemnification under the bonds and the second cause of action shows that DAB thought it could be held liable for SME's breach of contract with Reeco for the defective installation of a roof. In view of this latter evidence, this court sees no genuine issue of fact to preclude summary judgment on the issue of whether there was a joint venture.

## V. IS REECO'S CLAIM AGAINST INTERIORS BARRED BY THE STATUTE OF LIMITATIONS?

■ On October 15, 1981, Reeco sent a final acceptance letter to SME.[35] On July 2, 1981, Reeco filed a Cross–Claim against SME. However, Reeco never named DAB a Third–Party Defendant in this case and Reeco did not name Interiors until it filed its Second Amended Cross–Claim on December 5, 1988.[36] Since Reeco's claim is based on contract, Nevada's six year statute of limitations applies.[37] If this court uses Reeco's final acceptance letter of October 15, 1981, as the date that the statute of limitations begins to run [38], then Reeco's claim against Interiors was served outside of the six year statute of limitations period. Reeco may avoid the statute of limitations problem if its claim against Interiors relates back to its claim against SME.

35. The court notes that this is only one of several final acceptance letters that Reeco sent SME which related to workmanship and materials.

36. Its motion to Amend was filed on September 7, 1988.

37. See footnote 22.

38. The court assumes this date in the course of the argument.

39. Rule 15(c) of the Federal Rules of Civil Procedure provides that: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided

Reeco's claim against Interiors relates back if: (1) the claim asserted against Interiors and DAB in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) Interiors and DAB received notice of the filing of the lawsuit prior to the running of the statute of limitations (See *6A Wright, Miller & Kane, Federal Practice and Procedure* § 1498 (1989)); (3) Interiors (or DAB) is not prejudiced in maintaining a defense on the merits; and (4) Interiors and DAB "knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c).[39]

In this cause of action against Interiors (or DAB), Reeco seeks indemnity for the amounts it paid on the judgment finding Reeco and SME jointly and severally liable to the trustees for the unremitted pension funds. Reeco argues that it is entitled to indemnification under the "Save Harmless" clause of the construction agreement between SME and Reeco and under Rider 9, which required SME to comply with all pertinent collective bargaining agreements.

Reeco did not learn of the existence of a joint venture between SME and DAB [40] until June 16, 1988, when documents received from INA showed that DAB and SME intended to act as joint ventures in the contract with Reeco.[41] At the time Reeco

by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

40. Reeco cites an identity of interest between SME and DAB. See footnote 34.

41. It is important to note that Kevin Brown, the President of SME and Officer or Director of DAB, states in his deposition that he knew DAB would be liable for all of SME's debts. Additionally, the joint venture letter from SME and DAB to INA reflects an intention on the part of SME and DAB to hide the status of their relationship from Reeco. "If the originally named

learned of the existence of the joint venture, DAB had already merged into Interiors. When DAB merged into Interiors in April of 1986, DAB advised Interiors that DAB could be found liable in the pending litigation between Reeco and SME;[42] Interiors agreed[43], nonetheless, to assume the liabilities of DAB.[44]

Clearly, Reeco's claim against Interiors arises out of the same transaction as the original pleadings and Interiors received notice of it when it merged with DAB in 1986 which is prior to the running of the statute of limitations. Since Mr. Lusk is attorney for both SME and DAB, there is no prejudice shown. Finally, since the schedule for pending litigation shows that DAB could be liable for SME's obligations under the bond and under the contract with Reeco, Interiors should have known that but for a mistake, the action would have been brought against DAB or Interiors. Therefore, this court finds that Reeco's

claim against Interiors is not barred by the statute of limitations.

## VI. OTHER ISSUES

This court grants Summary Judgment sua sponte in favor of Reeco and against SME based on the previous mentioned analysis and arguments.

This court denies Reeco's Motion for Attorney's Fees pursuant to Fed.R.Civ.P. 11. (Doc. 182) and denies Reeco's Motion to Strike Interiors opposition to Reeco's Motion for Summary Judgment. (Doc. 180).

Reeco's request for interest[45] on its claim against Interiors is granted pursuant to Nev.Rev.Stat. § 99.040 which allows interest, in an action based on contract, when money is due. *Paradise Homes, Inc. v. Central Surety and Ins. Corp.*, 84 Nev. 109, 437 P.2d 78 (1968).

The money at issue in this case, $121,-320.25, was due on May 22, 1985, when Reeco satisfied this court's judgment. The

---

defendant ... knowingly allows plaintiff to think he has sued the proper party or actually misleads him as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute of limitations defense." *Wright, supra*, at § 1500.

**42.** Schedule 5.17, page 8, (Doc. 168 Ex. 8) indicates that DAB knew that they could be held liable for (1) indemnification to Reeco under bonds issued by INA and (2) breach of contract claims for defective installation of a roof at the Test Site. John Lusk, Esq., is the attorney for both SME and DAB. Clearly this shows that DAB had notice of this litigation, knew it should have been named and is not now prejudiced by a relation back of the pleadings. DAB later merged into Interiors and Interiors had knowledge of these liabilities at the time of the merger. Kevin Brown's deposition indicates that Interiors was advised of the possibility of being liable in this pending lawsuit. (Doc. 182 Ex. 25)

**43.** ARTICLE IV: EFFECT OF THE MERGER: "... all rights of creditors and all liens on any property of the Constituent Corporations shall be preserved unimpaired and all debts, liabilities, and duties of the Constituent Corporations shall thenceforth attach to the Surviving Corporation and may be enforced against it to the same extent as if said debts, liabilities, and duties had been incurred or contracted by the Surviving Corporation."

**44.** The merger agreement is governed by Ohio and Delaware law.

The Ohio Revised Code Annotated, Title 17 § 1701.82, states: "The surviving or the new corporation is liable for all the obligations of each constituent corporation ... Any claim existing, or action or proceeding pending, by or against any constituent corporation, may be prosecuted to judgment, with right of appeal, as if such MERGER or consolidation had not taken place, or the surviving or the new corporation may be substituted in its place ... All rights of creditors of each constituent corporation are preserved unimpaired ..."

The Delaware Code Annotated, Title 8, Chapter 1, subchapter IX, § 259, states: "When any merger or consolidation shall have become effective under this chapter ... all rights of creditors and all liens upon any property of any of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

And § 261 of the Delaware Code states: "Any action or proceeding, whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place, or the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding.

Nevada has a similar statute: Nev.Rev.Stat. § 78.495.

**45.** Doc. 168.

**618**

interest rate on that date was 12%. Nev. Rev.Stat. § 99.040.

### ORDER

Having carefully considered the motions before this court, this court finds as follows:

1. This court grants Reeco's Motion for Summary Judgment against Interiors. (Doc. 168).

2. This court denies Interiors Countermotion against Reeco. (Doc. 179).

3. This court denies Reeco's Motion to Strike. (Doc. 180).

4. This court denies INA's Motion for Summary Judgment. (Doc. 178)

5. This court grants Summary Judgment for Reeco, the nonmoving party, against INA.

6. This court grants Summary Judgment sua sponte for Reeco against SME.

7. This Order amends the Order and Judgment signed on July 24, 1990.

IT IS SO ORDERED.