958 F.2d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTSMAN, LOCAL 3
HEALTH AND WELFARE TRUST, Plaintiff,
Reynolds Electrical and Engineering Co., Inc.;
Defendant-cross-claimant-Appellee,
v.
STRUCTURES MIDEAST CORPORATION; USG Interiors, Inc.,
Counter-defendants-Appellants,
and
Insurance Corporation of North America,
Third-party-defendant-Appellant.
 Nos. 90-16247, 90-16499.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1992.
Decided March 26, 1992.
 
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 USG Interiors, Inc. ("Interiors"), Structures Mideast Corporation ("SME") and Insurance Company of North America ("INA") appeal the district court's grant of summary judgment against them and in favor of Reynolds Electrical and Engineering Co., Inc. ("REECO"). The district court found that SME, a subcontractor, was obligated to indemnify REECO, the contractor, for liability REECO incurred as a result of the failure of a subcontractor or SME's subcontractor to make certain union trust fund payments. The district also found that SME and D.A.B. Holding Corporation ("DAB") had undertaken to perform the subcontract as joint venturers and that, because Interiors assumed DAB's liabilities when DAB merged into it, Interiors was also liable. Finally, the district court found INA was liable as surety for SME under a performance bond. Trustees of Bricklayers and Allied Craftsmen Local No. 3 v. Reynolds Elec. & Eng'g Co., 747 F.Supp. 606 (D.Nev.1990).
 
 
 3
 We affirm.
 
 BACKGROUND
 
 4
 REECO has a contract with the United States Government Department of Energy to operate and maintain facilities at the Nevada Test Site. REECO has a labor agreement with the Trustees of the Bricklayers and Allied Craftsmen Local No. 3 ("Trustees").
 
 
 5
 On November 10, 1980, REECO entered into a contract obligating SME to construct cafeteria and other facilities at the site. The contract contained two provisions especially relevant to this appeal. SME agreed to comply with the terms and provisions of REECO's labor agreements. Additionally, SME agreed to "save harmless" the United States and SME "from any and all liability resulting from the Subcontractor's operations under this subcontract" (the "save harmless" clause).
 
 
 6
 The contract also required SME to obtain payment and performance bonds. INA was reluctant to issue the bonds based on SME's own assets, but agreed to issue the bonds when DAB agreed to indemnify INA for any payments INA had to make on the bond. DAB is controlled by Donald Brown, the father of Kevin Brown, president of SME. Apparently in order to persuade INA to issue the bonds, DAB and SME wrote a letter to INA informing it that, with respect to the REECO contract, DAB and SME were joint venturers, although DAB did not wish to appear as such in the contract or in the performance bond. The letter is signed by both Kevin and Donald Brown. It is dated December 15, 1980, although it was probably written earlier, because INA issued the performance bond on November 20, 1980.
 
 
 7
 On January 15, 1981, SME subcontracted out some of the work at the site to W.T.W.T., Inc. ("WTWT"). WTWT in turn agreed to comply with REECO's labor agreements. However, for work performed in March and April of 1981, WTWT failed to make certain pension fund contributions to the Trustees.
 
 
 8
 On October 2, 1981, the Trustees filed a claim against WTWT for the unpaid funds; although they obtained a default judgment, they failed to recover. They then made demand on INA, SME and REECO. In June, 1982, they filed suit against SME and REECO in Nevada state court. REECO removed the case to federal court; it also filed a cross-claim against SME and a third-party complaint against INA. On April 15, 1985, the district court, on summary judgment, found REECO and SME jointly and severally liable for the unpaid funds. REECO paid this judgment, but continued to seek payment from SME and INA.
 
 
 9
 In April, 1986, DAB merged into Interiors. A schedule of pending litigation furnished by DAB to Interiors in contemplation of the merger lists the suit by REECO against SME, and another possible claim by REECO against SME.
 
 
 10
 In June, 1988, REECO learned, as a result of discovery, of the existence of the joint venture letter. REECO then filed an amended cross claim, adding Interiors as a party.
 
 
 11
 REECO moved for summary judgment against Interiors. Interiors also moved for summary judgment, as did INA. The district court granted REECO's motion for summary judgment against Interiors, and sua sponte granted summary judgment for REECO against INA and SME. This appeal followed.
 
 STANDARD OF REVIEW
 
 12
 A grant of summary judgment is reviewed de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 DISCUSSION
 I. REECO v. Interiors
 
 13
 DAB merged into Interiors in April, 1986. Under the merger agreement, and under applicable state law, Interiors assumed all liabilities of DAB. The district court found Interiors liable because it found DAB and SME had entered into a joint venture; under Nevada law joint venturers are jointly and severally liable for obligations incurred by any joint venturer. Nev.Rev.Stat.Ann. § 87.150 (Michie 1991).[1] Interiors argues the district court erred in rejecting its statute of limitations defense, and in finding that a joint venture relationship existed.
 
 A. Liability of SME
 
 14
 Interiors' liability derives from the liability of SME. The district court found that SME was liable to REECO because it breached the Construction Contract. The parties do not dispute this point. Under the contract, SME agreed to comply with the labor agreements. When WTWT failed to make the payments to the pension plans, SME was in breach of the contract. It was also obligated to indemnify REECO under the "save harmless" clause.
 
 
 15
 B. Interiors' Statute of Limitations Defense
 
 
 16
 The district court found that REECO's claim against Interiors was not barred by the statute of limitations because, under Federal Rule of Civil Procedure 15(c), REECO's second amended complaint "related back" to the date of its initial filing. We affirm the district court's ruling that the statute of limitations did not bar REECO's claim, but on other grounds. See Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989) (court of appeals may affirm on any ground finding support in the record), cert. denied, 110 S.Ct. 3217 (1990).
 
 
 17
 The district court found that the statute of limitations began to run on October 15, 1981, when REECO issued a final acceptance letter under the contract. Under Nevada law, "an action upon a contract, obligation or liability founded upon an instrument in writing" must be commenced within 6 years. Nev.Rev.Stat.Ann. § 11.190 (Michie 1986). Thus, it reasoned, REECO had until October 14, 1987 to file suit.
 
 
 18
 However, REECO has two bases for recovering from SME (and, hence, Interiors). First, it has a simple breach of contract claim. That claim is, as the district court concluded, barred by the statute of limitations unless REECO can meet the requirements of Federal Rule of Civil Procedure 15(c). However, REECO also has a claim for indemnity under the "save harmless clause." That claim did not accrue until 1985, when REECO satisfied the Trustees' judgment against it and SME. Aetna Casualty & Sur. Co. v. Aztec Plumbing Corp., 796 P.2d 227, 228 (Nev.1990) ("A cause of action for indemnity or contribution accrues when payment has been made."). Thus, REECO's amended complaint adding Interiors was well within the statute of limitations.
 
 B. The Joint Venture
 
 19
 The district court granted summary judgment on the issue of whether a joint venture existed between SME and DAB, such that DAB's successor, Interiors, was directly liable to REECO. It did not err in this ruling.
 
 
 20
 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 21
 In granting summary judgment in favor of REECO, the district court focussed on the Dec. 15, 1980 letter, in which DAB and SME stated to INA that they were undertaking the performance of the REECO contract as joint venturers. DAB and SME stated:
 
 
 22
 This letter is not intended to limit the indemnity agreements we have, or will give you, but it is intended to serve as a joint venture agreement and to set forth our position as joint venturers in this enterprise.
 
 
 23
 They also explained, "For several reasons, it is not possible for [DAB] to appear in the contract documents, or as pricipal [sic] in any bond." In further support of its motion for summary judgment, REECO submitted the deposition testimony of Kevin Brown, who testified that the Dec. 15, 1980 letter accurately represented the relationship of SME and DAB with regard to the REECO contract, and that DAB had agreed to share in any profits or losses from the contract.
 
 
 24
 While Interiors submitted evidence showing that an indemnitor/principal relationship also existed between SME and DAB, the Dec. 15, 1980 letter contemplates the existence of this additional relationship. Interiors provided no evidence to controvert REECO's showing that SME and DBE intended to and did enter into a joint venture.[2] Thus, the district court did not err in granting summary judgment in favor of REECO on this issue.
 
 II. REECO v. INA
 
 25
 The district court found INA was liable to REECO because, under the Performance Bond, INA was a surety as to SME's obligations. INA argues that the district court erred in rejecting two defenses it raised.
 
 A. Release of SME
 
 26
 "The natural limit of the obligation of a surety is to be found in the obligation of the principal, and when that is extinguished or released, the surety is, in general, discharged." 74 Am.Jr.2d Suretyship § 98 (1974); see also Asociacion de Azucareros de Guatemala v. United States Nat'l Bank of Oregon, 423 F.2d 638, 641 (9th Cir.1970) ("A surety is generally not liable on his undertaking unless his principal is liable and in default on the underlying debt. The defenses of the principal are available to the surety and, if the underlying debt is canceled, the surety's obligation ceases.").
 
 
 27
 INA argues REECO released SME from liability when REECO issued its letters of acceptance to SME. In a letter from REECO to Kevin Brown, dated October 15, 1981, REECO stated:
 
 
 28
 Please be advised that all equipment and materials have been received and installed as required by the terms of the subcontract. This letter constitutes final acceptance and you are hereby relieved of further contractual responsibility except as provided in the warranty clause.
 
 
 29
 Interpreting the letter as a whole, the district court concluded that the letter was intended to release SME only for responsibility for workmanship and materials. The court also looked to the language of the original contract; in addition, it had before it the affidavit of A. Wendall Marrs, the author of the letter, who stated that REECO had intended to grant only a release of this limited scope. INA submitted no evidence controverting this interpretation of the letter. Thus, the district court did not err in rejecting this defense by INA.
 
 B. Pro Tanto release
 
 30
 INA argues that the district court erred in failing to find that REECO was estopped from collecting from INA. It contends that when REECO paid SME the amount due SME under the contract, in spite of SME's liability for the unpaid pension funds, INA was released from its obligations as surety under the pro tanto doctrine. Because we find that on these facts the doctrine does not apply, we affirm the district court's rejection of this defense.
 
 
 31
 The Restatement of the Law of Security provides: "Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor a) surrenders or releases the security." Restatement of Security § 132 (1941). However, a comment to this section sets out a key limitation on this doctrine: "Where a surety's obligation is not conditioned upon the creditor's enforcement of other security he may have, the continuance of the creditor's right against the security does not depend upon his using such other security as he may have to satisfy in whole or in part his claim against the principal." Id. at cmt. c.
 
 
 32
 Here, INA's suretyship agreement contains no requirement that REECO take any steps, such as setoff, to enforce its rights against SME. In addition, although INA was aware of SME's potential liability to the pension plans, it did not ask REECO to withhold payment to SME. Thus, INA cannot invoke the pro tanto doctrine.
 
 
 33
 We therefore affirm the district court's grant of summary judgment in favor of REECO against both Interiors and INA.
 
 
 34
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On its face, this statute applies only to partnerships. However, Nevada courts apply it to joint ventures as well. See, e.g., Haertel ex re. Borregard v. Sonshine Carpet Co., 757 P.2d 364, 366 (Nev.1988)
 
 
 [2]
 Interiors submitted the affidavits of George B. Davis and J. Bradford James who were officers of DAB at the time SME entered into the contract with REECO. Davis and James state that they believed DAB and SME had only an indemnitor/principal relationship. These declarations, however, have nothing to say about the effect of the Dec. 15, 1980 letter